UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

*Robert Robinson*

_____

NAME OF PLAINTIFF(S)

v.

*Brooklyn College*

_____

NAME OF DEFENDANT(S)

*Emc*

□ ORIGINAL

**COMPLAINT**

*Jury Trial
Demanded*

**IRIZARRY, J.**
**BLOOM, M.J.**

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** *In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*

✓     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325 and the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission.*


RECEIVED

-1-

Jurisdiction is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law.

1.      Plaintiff resides at:

37 ERASMUS St.
_____
Street Address

Brooklyn/Kings,  NY  ,  11226  ,  718 693 5427 .
County           State      Zip Code   Telephone Number

2.      Defendant(s) resides at, or its business is located at:

2900  Bedford  Ave
_____
Street Address

Kings    Brooklyn,    NY  ,    11210
County      City      State      Zip Code

3.      The address at which I sought employment or was employed by the defendant(s) is:

2900  Bedford  Ave
_____
Street Address

Kings   ,   Brooklyn    NY  ,    11210
County       City      State      Zip Code

4.      The discriminatory conduct of which I complain in this action includes

-2-

(check only those that apply).

| | |
|---|---|
| _____ | Failure to hire. |
| ✓ | Termination of my employment. |
| _____ | Failure to promote. |
| _____ | Failure to accommodate my disability. |
| ✓ | Unequal terms and conditions of my employment. |
| _____ | Retaliation |
| ✓ | Other acts (specify): _Racial/Age discrimination_ |

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.  It is my best recollection that the alleged discriminatory acts occurred on:
    _Ongoing from 2005 to 2008_.
    Date(s)

6.  I believe that the defendant(s) (check one)

    _____ is still committing these acts against me.

    ✓ is <u>not</u> still committing these acts against me.

7.  Defendant(s) discriminated against me based on my:
    (check only those that apply and state the basis for discrimination, for example, what is your religion, if religious discrimination is alleged)

    [✓] race _Caribbean_        [✓] color _Black_

    [ ] gender/sex _____        [ ] religion _____

    [✓] national origin _Jamaican_

    [✓] age _57_        My date of birth is: _3/09/52_
                                                    Date

    [ ] disability _____

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.   The facts of my case are as follows:

See Attached document for the Acts complained of.
The Attached details my claims under Title VII
& The ADA. The document details my wrongful
termination & prior discriminatory Acts that Are all
Related.

_____

_____

_____

_____

(Attach additional sheets as necessary)

**Note:**   As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.

9.   It is my best recollection that I filed a charge with the New York State Division of Human
Rights or the New York City Commission on Human Rights regarding defendant's

alleged discriminatory conduct on: ___3/26/2008___ .
                                        Date

10.   It is my best recollection that I filed a charge with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct on: __3/26/2008__.
                                                                          Date

**Only litigants alleging age discrimination must answer Question #11.**

11.     Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct (check one),

    ✓        60 days or more have elapsed.

             less than 60 days have elapsed.

12.     The Equal Employment Opportunity Commission (check one):

             has not issued a Right to Sue letter.

    ✓        has issued a Right to Sue letter, which I
received on   2/24/2009  .
                               Date

**NOTE:**     Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

    WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

                                  _RRodrig_
                                  PLAINTIFF'S SIGNATURE

Dated: _5/19/2009_

                               _37 ERASMUS St._
                               Address
                               _Brooklyn NY 11226_
                               _718-693-5427_
                               Phone Number

EEOC Form 161 (2/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Robert Robinson**
**37 Erasmus Street**
**Brooklyn, NY 11226**

From:  **Boston Area Office**
**John F. Kennedy Fed Bldg**
**Government Ctr, Room 475**
**Boston, MA 02203**

☐ | On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2008-02713 | **Barbara Meunier,**
Sr Investigator | **(617) 565-3207** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_Robert L. Sanders,_
**Robert L. Sanders,**
**Area Director**

FEB 2 4 2009

*(Date Mailed)*

Enclosures(s)

cc:  **Hilary B. Klein, Associate General Counsel**
**Office of the General Counsel & Vice Chancellor for**
**Legal Affairs**
**CITY UNIVERSITY OF NY (CUNY)**
**535 East 80th Street**
**New York, NY 10021**

## Submitted by: Robert Robinson  (16 pages, plus exhibits)

### Jurisdiction

The Equal Employment Opportunity Commission ("EEOC") enforces the Age Discrimination in Employment Act of 1967 (ADEA), Titles I and V of the Americans with Disabilities Act of 1990 (ADA), the Equal Pay Act of 1963 (EPA), Sections 501 and 505 of the Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of 1964 (Title VII).  Accordingly, the EEOC has jurisdiction in this matter, as this case is being brought pursuant to Title VII and the ADEA.  Similarly, the New York State Division of Human Rights ("NYSDHR") also has jurisd-iction since New York State Civil Rights protections may have also been violated.

### Statute of Limitations

A charge must be filed with EEOC within 180 days from the date of the alleged violation, in order to protect the charging party's rights.  This 180-day filing deadline is extended to 300 days if the charge also is covered by a state or local anti-discrimination law. For ADEA charges, only state laws extend the filing limit to 300 days.  This case is being brought to the EEOC and the NYSDHR well within the statute of limitations period.

### Facts

This troubling story of employment discrimination began when I was employed officially by Brooklyn College on April 15, 1991.  My initial title was "Accountant," a position I was well qualified for based in part on a reference letter from the well known "Big 8" international audit firm of Price Waterhouse complimenting my work there.[1]  I

---

[1] See Exhibit 1

gained 8 years of relevant accounting & auditing experience during my time at Price Waterhouse. Additionally, I hold a B.S. (cum laude) in accounting, a Master of Arts in accounting and I was successful on the difficult Certified Public Accountant Exam; I am now just awaiting licensure.

In 1999, I was promoted to Accounting Manager of the Auxiliary Accounting Unit at Brooklyn College.[2] I gained the respect of those I managed and they highlighted my contribution to their successful professional development on several occasions.[3] Beginning in 2001, I also used my accounting knowledge and experience to teach at NY City College of Technology. I would hold the position of Accounting Manager for 9 years until my unjustifiable, unfair, illegal, wrongful, and discriminatory dismissal on 2/22/2008 as detailed below.

From 1999-2004, I managed under the supervision of Comptroller and Business Manager Mereese Ladson, a black woman, who passed away in 2004. During that time, my tenure was peaceful; however, the College was not completely free of possible racial bias issues.[4] After Ms. Ladson's untimely death, rumors immediately circulated that there would be racially based changes within Brooklyn College staff. Ms. Ladson was replaced by Alan Gilbert, a white male. It was widely known that he disliked her; this only served to fuel the speculation. In an effort to address those rampant, but apparently accurate rumors, Deputy Comptroller Juanita Hill sent an email[5] on 10/7/2004 stating that:

---

[2] See Exhibit 2 for initial Accounting Manager responsibilities. My responsibilities would become more expansive in the following years.
[3] See Exhibit 3
[4] See Exhibit 4: Email addressed to President's office on 4/3/2003
[5] Exhibit 5: Email dated 10/07/2004 from Deputy Comptroller Juanita Hill

2

"A restructuring of the Business Operations will be taking place in early November...I have met with Steve [Little, Vice President of Finance and Administration] and he has assured me that no one will be loosing [sic] their jobs but there will be changes.  I am asking that you dispel roomers [sic] and if you have any questions about changes, please feel free to come and talk to me."
[Exhibit 5]

While nervousness abounded about "restructuring," I realized all I could do was perform well, while doing my job.. Since I began managing the department in 1999, the audited financial statement results were consistently positive.[6]  There were positive comments made by the University Accounting Office, which is the head body for all City University of New York ("CUNY") colleges.  Our department was also recognized and applauded by the external auditors for having no internal control weaknesses.  In fact, we were only 1 of 2 colleges within the 23 College CUNY network to have no internal control weaknesses.  I always received positive evaluations during my tenure as manager. I handled all areas of the department, namely: accounting, external audits, benefits, payroll, human resources, parking, cafeteria, Starbucks operations, and implemented various policies and procedures.

Despite all this, the genesis of my unfair and discriminatory treatment began with the "restructuring" and resulted in my wrongful termination after 17 years of service. Around this time, the rumors and fears became factual as black employees, specifically black males, began to have their job titles and duties downsized and changed.

On May 31, 2005, Donal Christian, the younger male who would eventually wrongfully terminate me, was added to the payroll.  Ironically, because I handled

---

[6] Exhibit 6: Email dated 9/27/2005 regarding independent audit and Fall 2006 self report regarding audit

3

payroll's budget as well, the appointment came through me.[7]  From this point onward

more changes occurred, which caused me to take a closer look into what was going on at

work.

The last salary increase I received was in December, 2003.[8]  Subsequently, my

requests for a salary increase were repeatedly denied.  Having access to payroll

information of individuals in my department led to a startling discovery.  All non-black

workers had received a salary increase, while some received the increase and were also

transferred out of the department and promoted.[9]  Black workers in my department did

not receive any salary increases or any promotions.  This discovery reeked of an overt

racial bias within the "restructuring" process.

The atmosphere at work became highly unpalatable.  I began to receive an

excessive amount of emails (at times written in patronizing and unprofessional large bold

fonts) for work to be completed within unrealistic and unachievable deadlines with

several irrelevant individuals being copied on occasion.[10]  These unrealistic deadlines

directly conflicted with our own stated policy.[11]  My work day was consistently and

negatively impacted by the volume and harassing nature of the emails I received.  Many

emails asked for clarification of accounting procedures and terms that should have been

clear.  This lack of understanding can be attributed to the fact that those supervising me

hold BS or MBA degrees, which only provide a basic understanding of simple accounting

---

[7] Exhibit 7: Memo from Alan Gilbert, Assistant VP of Budget & Planning, Re: Donal Christian appointment
[8] Exhibit 8: Last raise: 12/1/03
[9] Exhibit 9: Table detailing salary increase for only non-black workers. Black workers did not receive this benefit
[10] Exhibit 10: See for example bold font on 12/19/2006 email from Alan Gilbert; See for example time stamps on emails sent by Alan Gilbert on 12/11/2006 and 12/12/2006, etc.
[11] Exhibit 11: See 6th bullet point on page 1 from 10/20/2006 staff meeting, "We will be mindful of having realistic goals and reasonable time frames for accomplishing them.

concepts and principles.  In contrast, I have mastered various complex accounting concepts and principles based on my combined 35 years of experience in accounting and my educational accomplishments within the field.

A negative campaign regarding my department also took place during that period. The emails with the unnecessary CC's and the bolded font were one avenue of attack. Meetings and word of mouth presented more opportunities.  During meetings, my department was subjected to unwarranted and excessive criticism.  However, the independent audits continually proved that we were producing work of excellent quality. Additionally, two word of mouth attacks were relayed to me.  On one occasion, after searching diligently and comparing documents from prior years to determine if there were missing funds, Alan Gilbert allegedly stated: "Auxiliary Accounting is honest; in any event they would be too stupid to know how to successfully steal funds."  On another occasion, it had appeared I was mistaken on some accounting statements, but the auditors had actually made the error.  Alan Gilbert allegedly displayed "elation from [my] mistake" and was disappointed when he discovered I had been correct.[12]

Two emails from 2007 highlight some of the unwarranted abuse I was subjected to during the new management's tenure.  The first email details an exchange I had with Jules Levine over the telephone on February 2, 2007.[13]  In that phone exchange Jules Levine ridiculed me by stating: "Don't you understand English?"  This comment was unnecessary and unprovoked; it upset me greatly.  I felt the question was directed towards my nationality because I am of Jamaican heritage. I am fully aware that a

---

[12] Exhibit 12: Email background to the oral exchange.
[13] Exhibit 13: Jules Levine says: "Don't you understand English?"

5

professional work environment does not have to be amicable, but unprovoked attacks are completely unacceptable.

The second email exchange occurred on August 8, 2007 between myself and Donal Christian[14], who at this point had been promoted to a newly created position titled "Director" in April 2007 and in such a short while had become my supervisor. Donal clearly uses sarcastic language to overtly disparage and insult me. I again found myself subjected to unprofessional behavior and unwarranted abuse. I responded to this hurtful email and let Donal know exactly how I felt. Between April and December 3, 2007, Donal Christian constantly alluded to termination in his conversations with me.

On December 3, 2007 I received an extremely negative evaluation[15], which was a transparent attempt to provide a legitimate cover to the discrimination. I was extremely surprised to receive an evaluation because Donal Christian had only been my supervisor for 7 months. Having given evaluations in the past in my capacity as Accounting Manager, I know they are always given at one year intervals, at a minimum. To date, I was and remain the only individual in the department to be evaluated. I did not sign the evaluation as I disagreed with the contents in its entirety. I believed and still believe I was evaluated under an erroneous title. The 12/3/2007 evaluation identifies me as a "Senior Accountant;" in a reply memo dated 12/10/2007.[16] I disputed this title, asked for supporting documentation and gave reasons why I did not sign the evaluation. I also requested copies of all prior evaluations.

---

[14] Exhibit 14: Note August 8, 2007 email from Donal Christian, with emphasis on paragraph 5 and my response thereto.
[15] Exhibit 15: 11/21/2007 Evaluation. I dispute the title under which I was evaluated
[16] Exhibit 16: 12/10/2007 My Memo to Donal Christian in response to 11/21/2007 evaluation

In a response later dated 12/21/2007, Donal Christian provided an inadequate response to my claims and issues.[17]   He puts forth unpersuasive evidence that I somehow received notice of a title change.  First, he mentioned the suspicious "reorganization" (restructuring) that has disparately impacted mostly male black Brooklyn College employees, including myself.  Second, he claimed that Juanita Hill changed my title to Senior Accountant in 2006 with no written documentation to substantiate this baseless claim.  Third, he contended that my position was advertised in January 2007; again, there is no written documentation to explain why or how I would have actual or constructive notice of this occurrence.  Lastly, he argued that an email sent out on 3/11/2007 from Alan Gilbert notifying staff of a candidate interview provided notice of my title change. He dismissed my claim as not credible.

I have irrefutable evidence that my claim of a clandestine title change of which I had no knowledge is the only correct inference.  First, there is a print out from the Brooklyn College website directory dated **4/18/2007**, in which I am identified as the Accounting Manager.[18]  Second, there is another print out dated **6/22/2007**, in which I am again identified as Accounting Manager.[19]  I believe that on the day of my termination, my title remained the same on the website.  This evidence clearly indicates that my alleged title change was made with neither actual nor constructive notice to me.  If my title change was actually made in 2006 as Donal Christian claimed, a website update should have surely been made two years later.  Donal Christian's claims are simply not credible.

---

[17] Exhibit 17: 12/21/2007 Response to my Memo from Donal Christian
[18] Exhibit 18: 4/18/2007 directory print out identifies me as Accounting Manager
[19] Exhibit 19: 6/22/2007 directory print out identifies me as Accounting Manager

I was not the only individual without notice that my title was changed. In an email dated 5/1/2007 from Bruce Filosa[20], Director of Recreation, Intramurals and Athletics, wrote to me in my known capacity as Manager. Alan Gilbert responded to that email by stating that "Donal is now the Director of the area." I was also asked to evaluate a staff member in Summer 2007, a task usually performed by someone in a managing capacity. Title changes usually are common knowledge and are fully disclosed; here, this was not the case as the evidence unequivocally shows.

In a reply memo dated 12/28/2007[21] to Donal Christian I informed him that I felt his response was inadequate. In his response letter dated 1/15/2008[22], Donal Christian again failed to address my concerns or provide written documentation to substantiate his inaccurate claims. Exactly one month later 2/15/2008, my last evaluation was prepared and delivered to me. I was improperly terminated on 2/22/2008. Another highly negative evaluation identifying me as Senior Accountant was given at that time; I fully dispute its contents and therefore did not sign it.[23] Thus, I received two negative evaluations in a 9 month period. This is virtually unheard of and leads to the conclusion that discrimination was definitely at play. This hastily put together latter evaluation failed to identify job knowledge as a reason for my termination. My future employment opportunities will be negatively impacted by this discriminatory termination; 17 years of possible references have nearly become worthless because of this egregious action.

Lastly, it is highly doubtful after a total of 17 years doing this job, 9 years as Accounting Manager, and single-handedly running the department for the most part, that

---

[20] Exhibit 20: Email from Bruce Filosa dated 5/1/2007
[21] Exhibit 21: Reply memo to Donal Christian dated 12/28/2007
[22] Exhibit 22: Reply letter from Donal Christian dated 1/15/2008
[23] Exhibit 23: Negative Evaluation #2 dated 2/15/2008

8

I suddenly became incompetent.  A combined 35 years of accounting experience does not spell incompetence.  Being the most highly qualified individual in the department does not spell incompetence.  Annual positive independent audits from two separate groups of disinterested auditors do not spell incompetence.  In the end, the only incompetence present here is the clumsy attempt to cover up the clear injustice that was precipitated upon me.  An unforgivable wrong was done here and it needs to be punished with the law that exists to protect innocent victims such as myself.

## Discrimination based on Race and National Origin

Title VII of the Civil Rights act of 1964 as amended by the Civil Rights Act of 1991 provides a cause of action for discrimination affecting any term or condition of employment on the basis of race, sex, color, religion or national origin. Title VII applies to employers with fifteen or more employees. Here, my case involves disparate treatment based on race which led to a wrongful and illegal termination. There was intent to discriminate, and the evidence presented will prove that much. I certainly understand that the initial burden is on me to show that my employer actually relied on the prohibited classification when making the decision. The direct evidence will show that to be the case. I am confident that my employer will be unable to meet their burden. However, even if the direct evidence is not sufficient, I understand that an employee who lacks direct evidence can rely on an indirect, "burden-shifting" method of proving race discrimination. Of course, here, the *McDonnell Douglas* burden shifting analysis applies.

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and the other cases interpreting it, in order to establish a prima facie case of discrimination, a plaintiff must show that: (1) plaintiff belong to a protected group; (2) plaintiff applied for or held a position for which they were qualified; (3) plaintiff was not hired or was subjected to some other adverse employment decision; and (4) the position remained open or other similarly-situated employees outside the protected group were not subjected to the adverse employment decision. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to show that there was a non-discriminatory reason for the

10

adverse employment action. Once that occurs, the burden shifts back to the employee to show that the reason proffered was pretext.

In the present case, I was an employee of Brooklyn College for 17 years. For all those years, I have continuously performed my duties to the full satisfaction of my employer and all my supervisors. I received glowing feedback from not only my supervisors, but also from two separate outside independent auditors annually. From about 1991 to 2006, I continually received positive feedback on all my work, and was consequently awarded more responsibility. In 1999, I was promoted to my current title of Accounting Manager. Whenever I was reviewed by my supervisors from 1991 to 2006, those reviews were all positive.

I believe most of my colleagues, co-workers, and staff will agree that the dynamics of the office change during the so-called "restructuring" which occurred in late 2006. There was certainly racial tension when the department came under new supervision. The new principal supervisors were non-blacks and they started to give more favorable treatment to the employees who are not minorities. Several black employees felt worried that they would be discriminated against, and be denied advancement opportunities. Unfortunately, that is exactly what happened. Non-black employees with less experience and less pedigree were promoted and given salary raises. Even though I made numerous requests, I did not receive any salary increase. My last increase was in 2003, and I have not been promoted since 1999. In fact, even though I was never informed of that fact, my employer maintains that my title was changed. Not only was I not notified of this demotion, no information or reason was given for this alleged change in title, even after I made numerous inquiries. Indeed, I believe up the the day of my

11

termination, the Brooklyn College website probably showed my title as Accounting manager. My co-workers and subordinates continued to refer to me as such until my termination. Apparently, my supervisors felt that I was not worthy of being informed of my title change. This alleged title change did not result in any pay differential. Additionally, I continued to perform all the tasks required of the Accounting Manager. This certainly raises doubts as to whether there was ever any such title change.

As for establishing a prima facie case, I am indeed a member of a protected class. I am a black male, with a national origin of Jamaica. I was born and raised in Jamaica and immigrated to the United States in 1986. I was very qualified for my position as Accounting Manager. Not only do I have over 35 years of experience in the accounting field, including the 17 years at Brooklyn College, I am also an Adjunct Professor of Accounting at a four year college. Additionally, I hold a Bachelor's degree *cum laude* in Accounting and a Master's degree in Accounting. I have also passed all 4 parts of the CPA examination, and I am currently simply awaiting licensure. I have led the Auxiliary Accounting department at Brooklyn College for the last 8 years and I am well respected by my peers for my vast knowledge of accounting. I was indeed subjected to an adverse employment decision when I was terminated from my employment. My reputation has been tarnished and this will undoubtedly hinder me from obtaining future gainful employment. Moreover, other less-experienced, and less-educated white and non-black employees were not terminated, and were in fact promoted and given raises instead of me. I firmly believe that my race was the motivating factor for said actions.

My employer may offer my two most recent evaluations as proof of a non-discriminatory reason for my termination, but I submit that this reason is a pretext. I was

12

evaluated twice in less than 9 months:  Once in the year 2007 and again in January 2008. That is not policy. In fact, no one else in my department was evaluated. The two recent evaluations were negative because my supervisors wanted to cover their tracks. However, their attempt fails because the negative reviews came **AFTER** my alleged demotion.  At the time that I supposedly got replaced, I had not received any negative write-ups or reviews.  I had worked about 16 years with no negative reviews and suddenly they claim to have demoted me.  As stated above, I did not agree with the reviews and I sought clarification from my supervisors, and they refused to provide me with any reasons for their negative evaluation.  I was never given any prior warning, and was never subject to any prior discipline.  Of course, after 16 years of service, all with positive reviews, I was certainly shocked to see the negative evaluations.  That is the reason I sought an explanation as to where those negative comments were coming from. I wanted this information so that I could evaluate their veracity, and if they were indeed true, I would have made efforts to improve.  I was never given that opportunity. I have written evidence of my requests that were rebuffed. My employer did not want an aging, black man, with a good salary, and great benefits burdening them anymore.  I had become too costly.  They knew that they had to get rid of me so that they could hire someone younger, someone who shared their exact point of view, and most importantly, an individual who is not black.  They therefore orchestrated a plan which would give them a reason for my termination and thereafter effectuated that result.

The negative evaluations are a pretext. How is it even possible that an employee, with 17 years of experience in the department would be subjected to two reviews in less than 9 months? It simply does not make sense. For 17 years I did my job efficiently, and

13

then suddenly, new management comes in, and decides that I am not qualified. It is just not possible. The two negative reviews were fabricated and that is the reason they could not give me a detailed explanation, even after I requested such an explanation. I knew that to be the case, and that is the reason I refused to sign either review until a full explanation was given to me. Additionally, my beliefs were confirmed when, during a phone conversation, Jules Levin said to me "do you even understand English?" I confronted him regarding the comment via e-mail and he ignored my email.

There was a pervasive discriminatory environment in the department. Often, I felt that I was part of a hostile work environment. I even applied for the higher position of Assistant Comptroller and was denied that position as well. All in all, I purport that I was discriminated against because of my race. I did not receive a promotion because I was black. I did not receive a raise in 4 years because of discriminatory reasons motivated by my race and/or national origin and lastly, I was given negative evaluations to facilitate my termination, because of my race and/or national origin. I am confident the evidence gathered will vindicate my rights and hold all of the defendants liable for violating Title VII, ADEA and other applicable federal and New York state statutes prohibiting discrimination.

## **Discrimination based on Age**

The Age Discrimination in Employment Act ("ADEA") protects workers who are at least 40 years old against discrimination based on age. The provisions of the ADEA are patterned after Title VII of the Civil Rights Act and share the common purpose of eliminating discrimination in the work place. Under *Abdu-Brisson v. Delta Airlines*, 239 F.3d 456 (2d Cir.2001) the prima facie case for age discrimination is as follows: (1) Plaintiff is a member of the protect class; (2) Plaintiff is qualified for the position; (3) Plaintiff has suffered an adverse employment action; and (4) The circumstances surrounding that action give rise to an inference of discrimination.

First, I am a member of the protected class by virtue of me being 56 years of age, although I was 55 years of age at the time of the final adverse action. Donal Christian, who authored my two negative evaluations, is not in the protected class by virtue of being about 35 years old. Rabia Azhar who possibly may be the new accounting manager, but of course without proper notice, is also not in the protected group as she is about 30 years of age. Rabia received compensation at a higher rate than me, though I was denied a raise.

Second, I am qualified for the position of accounting manager based on my academic credentials. I have at least 35 years of combined practical accounting experience. I am an adjunct professor of accounting at NY City College of Technology. I held the position in question for approximately nine years. My department produced excellent work product while I managed it, as shown by the reports of various independent auditors.

15

Third, I suffered numerous adverse employment actions.  I was subject to unprompted abuse that made my work situation untenable.  I was denied pay increases repeatedly since 2003.  I was the victim of a calculated smear campaign which served to discredit my abilities.  I received no actual or constructive notice that my job title had changed and the individual who may have replaced me is not a member of the protected class. I was negatively evaluated twice in a nine month period and summarily terminated after 17 years on the job.

Fourth, the circumstances give rise to an inference of discrimination based on the fact that I was the only individual singled out for an evaluation and this evaluation occurred within an unusual nine month period.  The restructuring that took place within the business operation disparately impacted male blacks more than any other group and in my case a male black who is in the applicable protected age group.  The inference here is more than mere coincidence.  Additionally, I was the senior member of the staff, with years of applicable experience and knowledge and instead of being treated as an asset; I was treated as a liability.   Donal Christian, who terminated me and subjected me to the most negative treatment, is not within the protected group.  Rabia Azhar, who possibly may be the new accounting manager, costs the department less in benefits.  Thus, the attack on my work product was an attempt to cover up the fact that wrongfully terminating me would cut costs.

All of the evidence taken together establishes a prima facie case of age discrimination.

16

# EXHIBIT 1

Scotiabank Centre
Duke Street
Box 372
Kingston, Jamaica

Telephone 809 922 6230
Telex 2357 PRICEWAT JA
Telecopier 809 922 7581

*Price Waterhouse*



2 April 1991

Mr Arthur H. Korn
Accounting Manager
Brooklyn College Association
Bedford Avenue & Avenue H
Brooklyn, New York 11210
U.S.A.



PLAINTIFF'S
EXHIBIT
1

Dear Mr Korn

**RE:  MR ROBERT B. ROBINSON**

The abovenamed was employed to this firm from August 1973 to October 1981,
at which time he resigned to emigrate to the United States of America.  He joined
the firm as a junior audit clerk and progressed to the rank of staff accountant,
the position he held at the time of his resignation.  His work with the firm
exposed him to all aspects of audit work on small and medium sized audit
assignments.  His duties consisted, inter alia, of evaluating internal controls,
making decisions as to degrees of substantive testing required, supervising audit
assistants, drafting financial statements, reviewing audit files and discussing
internal control weaknesses and draft audited financial statements with clients.

Throughout his period of employment with the firm Mr Robinson performed well
and was generally rated as above average.  He displayed technical competence,
conducted himself professionally and both fostered and maintained good
colleague and client relationships.

Yours sincerely

Debbie Dunkley (Miss) CA, ACCA
Training Manager

DD:ej

B.W. Young   J.D. Fulford   T.A. Nurse   R.L. Downer   E.L. McDonald   F.R. Taffe
J.L.M. Bell   M.G. Rochester   P.W. Pearson   J.A. Robinson   E.A. Crawford   J.W. Lee.

# EXHIBIT 2


PLAINTIFF'S EXHIBIT 2
Page 1 of 2

**Brooklyn College Business Office**
**Accounting Staff**

**Auxiliary Accounting**

**Accounting Manager (BR)**
- Supervise all Auxiliary Accounting operations and personnel.
- Acts as a liaison to external auditors.
- Review all monthly financial reports and maintains general ledger.
- Review all bank reconciliations.
- Perform periodic internal audit.
- Enters accounting information into the CUNY GAAP system at year-end.

**Accountant (KC)**
- Daily accounting for Central Depository fund, including:
  1. Processing of payment requests on Real World system
  2. Generation of vendor checks
  3. Preparation of monthly bank account reconciliation
  4. Resolves problems with vendor accounts
  5. Functions as liaison between Auxiliary accounting and Director of Central Depository fund
  6. Quarterly budget reports and other financial reporting for Central Depository fund (all organizations)
- Prepares and submits sales tax filing for auxiliary enterprise entities
- Maintains general ledger for Child Care and Other Members
- Prepare monthly financial reports for Child Care and Other Members
- Processes payroll taxes for  Child Care
- Authorized to certify (emergency basis) State accounts payables (NYSOSCA system)
- Enters accounting information into the CUNY GAAP system at year end.

**Accountant II (SF)**
- Administers accounts payable for Auxiliary Accounting, SUBO the Athletic and Recreation fund, including:
  1. Receipts of all goods/services receiving documentation and follow-up with departments
  2. Review of all invoices and payment requests
  3. Approval of all invoices for payment
  4. Input of completed payment vouchers into the Real World system
  5. Generation of checks
- Processes accounts receivable and cash receipts for all auxiliary enterprise activities and non-tax levy activities, including preparation of deposit and delivery of deposits to the bank
- Processes payroll for the following non-tax activities: Music, Ushers, Prep Center, and Tech
- Generates payroll checks
- Processes pension and tax-deferred annuity contributions for all non-tax levy employees
- Approves payment vouchers for tax levy accounts payable
- Processes payment vouchers and issues checks for the President's Emergency Fund
- Administers daily passes and pool passes for Athletics & Recreation Fund

PLAINTIFF'S
EXHIBIT
2
Page 2 of 2

- Filing of payment vouchers and payroll records for all funds/activities
- Processes payment vouchers and generates checks for SUBO
- Processes payroll for several non-tax levy entities, including receiving time sheets, reviewing and adjusting time sheets as necessary, input into payroll system and generation of pay checks
- Prepares wage data for unemployment filings
- Administers employee health benefits enrollment

## Accountant (BG)

- Maintains general ledger for SUBO, Auxiliary, Athletic and Recreation, Non-Tax, PEEF, Scholarships & Awards and Trusts & Gifts.
- Prepare monthly financial reports for SUBO, Auxiliary, Athletic and Recreation, Non-Tax, PEEF, Scholarships & Awards and Trusts & Gifts.
- Prepare Quarterly 941 tax forms.
- Monthly audit of bookstore commissions

## Information Systems Aide I (EH)

## Administrative Assistant (JT)

Position description:
- Function as receptionist for Auxiliary Accounting unit
- Assist with input of vendor payments
- Input of complete payment vouchers into the Real World system
- Assist with input of cash receipt data
- Input of payroll data for non-tax levy activities
- Filing of payment vouchers and payroll records
- Mail processing

# EXHIBIT 3

Bob
Have a lovely
Boss Day. You
deserve it!!
Jackie

You do inspire
us to work hard &
accurate. Have a
great day.
BEN (Maggie).

Boss,
Thank you for always
answering this office
one the best. We are
blessed to have you as our
boss. Have a good day

?. are fortunate to
ve a BOSS like you.
Jane

Keith
Keep up the good
Work
Kevin

Ben
you're a chief
high manager in th
this office staff.
Whose children smile
a bright light he
Office
Holly

You always give your best
and inspire others
to be their best.
That kind of leadership
is more than a skill, it's a talent....
one that is appreciated and valued
by all those fortunate
to work with you.

Happy
Boss's Day



PLAINTIFF'S
EXHIBIT
3
1 of 3
tabbies



Robert –
Happy Boss's Day –
you are a great guy
to work around with.
you are #1 you a boss!
Kevin

Have a great day!
You are a very good Boss.

Jane

We celebrate today
how great boss you
are. We celebrate
everyday how great
person you are!
Eva

And that makes working for you

a real pleasure.

The best luck for
the year you just started.
Will warm wishes that
happen you the best
human beings. Sissy



Bob,
Have a great Boss's day
Your abilities it.
Jessica

Thanks for making a
good manager Easy.
you day.
Maggie

PLAINTIFF'S
EXHIBIT
3
Page 3 of 3
teddies

# EXHIBIT 4

MSN Hotmail - Message

**MSN Home**   **My MSN**   **Hotmail**   **Shopping**   **Money**   **People & Chat**   Sign Out   Web Search:   G

**LendingTree**   Getting a Home Equity Line through LendingTree is as easy as 1-2-3!

**msn** Hotmail   Today | Mail | Calendar | Contacts

cedriccarter443@hotmail.com                                              Free Newsletters

✉ Reply   ✉ Reply All   ↪ Forward   ✕ Delete   ⊘ Block   ↯ Junk ▾   ⊕ Put in Folder ▾   🖶 Print View   💾 Save Addr

| | |
|---|---|
| From : | ██████████@brooklyn.cuny.edu> |
| Sent : | Friday, April 11, 2003 4:29 PM |
| To : | "██████████@HOTMAIL.COM"" <█████████@HOTMAIL.COM> |
| Subject : | FW: letter to Kimmich |

PLAINTIFF'S
EXHIBIT
4
Page 1 of 4



-----Original Message-----
**From:** Regine Latortue
**Sent:** Thursday, April 03, 2003 10:12 AM
**To:** 'Joseph Wilson'; Marc Williams; Michelle Payne; Peter Weston; 'Celia Adams'; Stephen U. Aja; Karen Alleyne-Pierre; Sylvia Anderson; Heshla Ash; Craig Bell; Saul H. Bethay; Nancy Brooks; William F. Browne; Dave Bryan; Marie Buncombe; Pauline Bynoe; Cedric Carter; Madonna Charles-Johnson; Ursula Chase; Donna Corbin; Patrick Croff III; Prudence Cumberbatch; George P. Cunningham; David Walters; Jean E. Davis; Lynda Day; Jacqueline de Weever; Nicole Decle; Xinia Ennis; Gwendolyn Ferguson-Pugh; Ken Forsh; Tunji Fussell; Millicent Grant; Ernest Green; Vannessa Green; Claudette Guinn; Shirley Hall; Mitzu Handy; Gwendolyn Harewood; Juanita Hill; Tabitha Holland; Nicole Hosten; Cynthia Hunter; Nicholas Irons; Florence E. Jackson; Sherwood Johnson; Haroon Kharem; Larry C. Knight; Meeese Ladson; Esther E. Lashley; Regine Latortue; Rosalin Latse; Barbara Lawson; Marion Lynch; Clement Mbom; Willie F. Page; Millicent Pascall; Jean Patterson; Gregory Pemberton; Lenora Peterson; Archie W. Potter; Jennifer Rubain; Suzie Samuel; Denise A. Scott; Robert Scott; Kenneth Seabrooks; Lincoln Sessoms; Launa Smith; Leroy Smith; Bert J Thomas; Edna Lynn Tuzo; Nelette Vanriel; Raymond Weston; Ann Wheeler; Jacqueline Williams; Mildred A. Williams
**Subject:** RE: letter to Kimmich
**Importance:** High

FYI - blind copy:

3 April 2003

President Christoph Kimmich

Office of the President

Dear President Kimmich:

With all the brouhaha surrounding recent personnel actions at Brooklyn College, it distresses me to bring to your attention yet another incident of misguided judgment involving the



reappointment of a member of our staff. I am referring to Ms. Michelle Payne, who in 1997, took over as Coordinator of Student Scholarships following the hasty departure of Vice-President Hilary Gold and Assistant Vice-President Pat Trent. During two very difficult years, Ms. Payne ably handled the responsibilities of the office, in spite of an almost complete lack of support staff. Under her guidance and supervision, the number of student scholarships distributed tripled, and the amount of funds allocated for these scholarships increased seven-fold. Further, Ms. Payne is one of the few citizens of our college community who has maintained and encouraged a viable and successful relationship with the community of the borough of Brooklyn. Her appearance on the Montel Williams show with a carefully selected group of students was a commendable illustration of the diversity we are so proud of, and was one of the very few instances where Brooklyn College was portrayed in a positive light in the media in the recent past.

In many institutions similar to ours, Ms Payne would be duly rewarded and promoted for her efforts. Instead, in a year crucial to her tenure, she has been denied reappointment, an action strangely similar to the fate of the two young white male faculty members whose non-reappointment you recently overturned. Let me point out that, unlike these two professors, Ms. Payne is a black woman, and has been subject to the two ills that have always plagued such individuals in our democratic society, namely racism and sexism. It is therefore even more imperative that you take a close look at this matter to ascertain on exactly what basis she was denied reappointment and verify that her basic civil rights were not violated. Considering the precedents that have already been set with the history of our personnel actions at the College, I fear that the media would have yet another field day in deriding the administration of our institution.

The Department of Africana Studies strongly supports Michelle Payne. She has been of great help to us, particularly with her assistance in our Black History Month events. This year, for instance, she played a crucial role in bringing to the campus local politicians such as Charles Barron, a member of the Council of Higher Education for the City of New York, and Senator Kevin Parker, a member of the Council of Higher Education for the State of New York, whose help we are counting on to see our students and the college through the dire budget crisis we are presently experiencing.

I thank you in advance for your attention to this matter, and for the assistance required.

Sincerely,

Régine Latortue,

Professor and Chair

Department of Africana Studies


        -----Original Message-----

    From:  Joseph Wilson [SMTP:wilso51n@verizon.net]

    Sent:  Wednesday, April 02, 2003 5:49 PM

    To:   Marc Williams; Michelle Payne; Peter Weston; 'Celia Adams'; Stephen U. Aja; Karen
    Alleyne-Pierre; Sylvia Anderson; Heshla Ash; Craig Bell; Saul H. Bethay; Nancy Brooks; William
    F. Browne; Dave Bryan; Marie Buncombe; Pauline Bynoe; Cedric Carter; Madonna Charles-
    Johnson; Ursula Chase; Donna Corbin; Patrick Croff III; Prudence Cumberbatch; George P.
    Cunningham; David Walters; Jean E. Davis; Lynda Day; Jacqueline de Weever; Nicole Decle;
    Xinia Ennis; Gwendolyn Ferguson-Pugh; Ken Forsh; Tunji Fussell; Millicent Grant; Ernest
    Green; Vannessa Green; Claudette Guinn; Shirley Hall; Mitzu Handy; Gwendolyn Harewood;
    Juanita Hill; Tabitha Holland; Nicole Hosten; Cynthia Hunter; Nicholas Irons; Florence E.
    Jackson; Sherwood Johnson; Haroon Kharem; Larry C. Knight; Mereese Ladson; Esther E.
    Lashley; Regine Latortue; Rosalin Latse; Barbara Lawson; Marion Lynch; Clement Mbom; Willie
    F. Page; Millicent Pascall; Jean Patterson; Gregory Pemberton; Lenora Peterson; Archie W.
    Potter; Jennifer Rubain; Suzie Samuel; Denise A. Scott; Robert Scott; Kenneth Seabrooks;
    Lincoln Sessoms; Launa Smith; Leroy Smith; Bert J Thomas; Edna Lynn Tuzo; Nelette Vanriel;
    Raymond Weston; 'Ann Y. Wheeler (Boylan4)'; Jacqueline Williams; Mildred A. Williams

Subject:      Re: BFSA minutes



Dear all,

Thanks to Marc for drafting a letter in Michelle's behalf.

Please note that we are asking the administration to "stop the clock" on all

dismissals/disciplinary actions against BFSA members/faculty of color

pending a review of the process to see if race is a factor, or supervisors

are being arbitrary and capricious.

Also note that Michelle is currently grieving, as I understand it, and a

legal/administrative process is in play. We will also work to make sure she

gets the best union representation possible. We have already expressed our

concern about Michelle, to the administration, without going into the

speiocfics of the case, and other employees/members of BFSA facing

disciplinary charges and termination. At this stage, Marc's letter, though

well intentioned, may not help the situation since our views have been

clearly expressed ...and will be again during a pending labor-management

meeting next week, at which I plan to formally introduce a "stop the clock"

proposal to all of the top administrators, and on behalf of the PSC, as a

contractual matter. We will keep you posted.

Best,

Prof. Wilson


> Peter/Members, attached is a draft of the letter discussed in our last

> meeting.  If you have any additions or revisions please e-mail them to

> me by Friday the 4th.  If I do not hear from you by that time, I will

> submit the final draft to Peter for submission.  Thank you in advance

MSN Hotmail - Message

> for your time and effort.

> Marc



PLAINTIFF'S
EXHIBIT
4
Page 4 of 4

**Get the latest updates from MSN**

⬥  ⬥  ✖  Inbox

**MSN Home   My MSN   Hotmail   Search   Shopping   Money   People & Chat**

© 2004 Microsoft Corporation. All rights reserved. TERMS OF USE   Advertise   TRUSTe Approved Privacy Statement   GetNetWise   Anti

# EXHIBIT 5

**Bob Robinson**

| | |
|---|---|
| **From:** | Juanita Hill |
| **Sent:** | Thursday, October 07, 2004 9:52 AM |
| **To:** | Bob Robinson; Desiree Wharton; Lisa DeStefano; Walter Garvey |
| **Subject:** | Deputy Comptroller's Area |



Good morning,

A restructuring of the Business Operations will be taking place in early November; I want you all to be prepared.  I have met with Steve and he has assured me that no one will be loosing their jobs but there will be changes.

I am asking that you dispel roomers and if you have any questions about the changes, please feel free to come and talk to me.

Please send:

1. Strengths and weaknesses
2. Any changes you would like to see in your departments
3. Changes you would like to see in departments you work with closely within our area.

In need this information on Tuesday, October 12, 2004 at noon.

Remember any comments, questions, concerns, please come see me.  Thank you for your continual support.  We are looking to make our work environment the best.

Juanita Hill,
Deputy Comptroller
Brooklyn College
718-951-5934

10/19/04

# EXHIBIT 6



**Bob Robinson**

| | |
|---|---|
| **From:** | Juanita Hill |
| **Sent:** | Tuesday, September 27, 2005 3:44 PM |
| **To:** | Bob Robinson |
| **Subject:** | FW: Grant Thornton Audit |

FYI.

-----Original Message-----
**From:** Jules R. Levin
**Sent:** Tuesday, September 27, 2005 3:35 PM
**To:** Alan Gilbert; Juanita Hill
**Cc:** Steve G. Little
**Subject:** Grant Thornton Audit

I just met briefly with the Manager, Nik Ohri, who is here today reviewing some workpapers, etc. He assured me that everything is going well and there are no weaknesses or significant concerns at this time. We should have a smooth closing on Thursday and they are running slightly ahead of schedule.

Nik also mentioned that he and Cosmo are still reviewing the ramifications involved in consolidating Athletics and Recreation and Central Depository for next year and should be back to me within two weeks.

Jules

[x] Upgrade Your Email - Click here!

4/25/07


PLAINTIFF'S
EXHIBIT
6
Page 2 of 5

Fall 2006
Auxiliary Accounting, Bob Robinson

The Fall 2006 was a very progressive semester for the Auxiliary Accounting unit. It was the first time we were able to commence the audit as early as September 2006. The departments goal of being more transparent and intertwine in the general Brooklyn college community have shown remarkable progress. Also, the monthly management/financial statements and reports were timely presented; the end users of the financial statements were trained in understanding the statements. In addition, improved professionalism was shown to the college community during the sale of the parking decals, coupled with the change of the type of parking decals being sold. A hand tag decal is now sold. The voucher processing time was considerably reduced as a result of an increase number of staff from one to three. All three individuals now handle this process.

### Audit
The university has put us on notice that the audited financials statements will be needed earlier and earlier each year. As a result, YR 2006 audit began at the earliest to date, which was September 2006 and the final statements are presently due January 2007. We were able to combine ACE and ECC and also combined Central Depository and Athletics. The principal purpose for the combination was the cost saving anticipated. As in prior years, the audit was error free and without internal control weaknesses.

### Transparency
Improvement was made in this area, management and user of the financials statements are now comprehending beyond the numbers and getting a better understanding of what goes on behind the scene.

### Training Of End Users
If the users of a report do not understand the report, it will be useless. As a result, the end users were given clearer instructions so as to make it easier in understanding the various reports.

### Professionalism/Parking
In order to better serve the college community, we changed the parking decal to hand tag coupled with additional training of staff members in dealing with the college community, faculty, staff and students.

### Voucher Processing
Due to increase staffing from one to three individuals processing time was reduced considerably.

SPRING 2007
In the next semester, the principal focus will be to improve transparency, continue training of end users, identification of revenue venture, continue improvement in professionalism in dealing with both the College community (faculty, staff, students and other department) ensuring that the financial statements are understood by the end users. The timing of the audited financial statements is being requested to be completed earlier and earlier and earlier, therefore more analysis and audit preliminary schedules will be prepared during Spring 2007 in order to accomplish this goal.

**Grant Thornton** 🐟

PLAINTIFF'S
EXHIBIT
6
page 3 of 5

**Memorandum**

*To:*     The Files

*From:*   Kevin Shortt

*Date:*   September 29, 2006 (updated)

*Re:*     Brooklyn College – Central Depository - Expenditure Memo

## Expenditure Procedures

The following memo consists of policies and procedures in place at the Brooklyn College (the "College") relating to the expenditure cycle. GT held discussions with Robert Robinson, Director of the Office of Auxiliary Accounting, in order to obtain an understanding of the expenditure cycle.

All requests for purchases are first made within each of the departments or student groups of the College. All staff must submit a request form to the respective supervisor in order to gain approval for a purchase; purchase order must be filled out and approved prior to the purchase.

The College does not operate a receiving department as such. As a substitute, an individual in the purchasing department or an authorized individual indicates on the copy of the vendor's invoice that conforming goods were received. A payment requisition package is then prepared and given to department supervisor's attention for an approval. The department supervisor either writes a memo requesting a payment or signs a payment requisition form indicating his/her approval.

Once the payment request form is completed and properly approved, it is then passed on to the Office of Auxiliary Accounting, which is responsible for processing all Non Tax Levy payment requests. Office of Auxiliary Accounting reviews payment requisition package to ensure sufficient supporting documentation, accuracy and completeness. The individuals responsible for reviewing the supporting documents include Eva Maragos, Accounts Payable Accountant, and Jackie Thompson, Administrative Assistant. One of the two within the Office of Auxiliary Accounting will examine the purchase order for an approval, reasonableness of the price, validity of the purpose and use of appropriate vendor. All original vendor's invoices and receipts related to the purchase must accompany the payment requisition. They also match the requisition information to the vendor's invoice and purchase order, ensuring appropriate supervisory approval, and place a general ledger code on the payment requisition in order for the information to be imputed properly. They then initial the invoice to validate their review.

The documents are subsequently brought to Bob Robinson, who reviews the package and gives a final approval. Once approval is granted, the documents are handed to either Sally Fleming, Accountant, or Kevin Carmine, Accountant, in order to cut a check and stamp the voucher to indicate that is has been paid. Once the checks are generated, they are brought to the appropriate check signatories for signature. Please review the check signatory list for each entity within the external permanent binder. A written signature must accompany each check regardless of amount. Checks for $2,500 and above, however, must also be signed by a second officer and returned to the

OAA. From there the check is either mailed by Jackie Thompson to the payee or held for pickup by authorized individual. All pickups are limited to emergency situations only.

GT further notes that no individuals can sign their own entities' checks; ie. Joe Benedict, Executive Director of Student Services, cannot sign any checks related to that entity, but is however allowed to sign other entity checks if needed.  The authorized check signatories include, but not limited to, Steve Little, VP of Finance, Alan Gilbert, Controller, Ed Lobley, Bursar, and Deseree Wharton, Revenue Accountant.



PLAINTIFF'S
EXHIBIT
6
page 4 of 5

**Beverly Gregory**

| | |
|---|---|
| **From:** | Bob Robinson |
| **Sent:** | Wednesday, February 21, 2007 11:19 AM |
| **To:** | Beverly Gregory |
| **Subject:** | FW: Grant Thornton audit @y/e 6/30/03 |

PLAINTIFF'S
EXHIBIT
6
page 5 of 5

Bev,

Could you print for me? Thanks.

---

**From:** Mereese Ladson
**Sent:** Friday, December 05, 2003 11:53 AM
**To:** Bob Robinson; Juanita Hill
**Cc:** Beverly Gregory; Jules R. Levin; Kevin Carmine
**Subject:** RE: Grant Thornton audit @y/e 6/30/03

Bob,

!Super Job!  My compliments to you and your staff.

Mereese

-----Original Message-----
**From:** Bob Robinson
**Sent:** Thursday, December 04, 2003 4:49 PM
**To:** Mereese Ladson; Juanita Hill
**Cc:** Beverly Gregory; Jules R. Levin; Kevin Carmine
**Subject:** Grant Thornton audit @y/e 6/30/03

Just received words from Grant Thornton on the issue of concern raised at the exit conference.

As a reminder these were:
1) treatment of the depreciation
2) the reclassification of the bank overdraft.

Grant Thornton concluded that Auxiliary Accounting was indeed correct in its handling of the transaction and thus no changes/reclasification are required.

Bob

# EXHIBIT 7



**BROOKLYN COLLEGE**

PLAINTIFF'S
EXHIBIT

7

To:         Bob Robinson,
            Auxiliary Accounting

From:       Alan Gilbert,
            AVP for Finance, Budget & Planning/Comptroller

Date:       May 31, 2005

Re:         Appointment (Salary Supplement) – Donal Christian

∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙

This memorandum serves as justification to appoint Donal Christian to the
Brooklyn College Non-Tax Operating Account payroll effective June 1, 2005,
through June 30, 2005.  The following are the details of this appointment:

Name:              Donal Christian

Address:           759 46th Street, Apt. C2
                   Brooklyn, New York 11220

Home Phone #:      718-854-1675

Social Security #: 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

Total Payment:     $583.33 (to be paid in bi-weekly installments over the term of
                   the appointment)

**Approved:** Steve G. Little, VP for Finance & Administration

If you have any questions, please contact me.  Thanks!

5|30 – 6|12 N
6|13 – 26|05N
6|27 – 7|10|05

**Office of the Assistant Vice-President for Finance, Budget, and Planning/Comptroller**

Brooklyn College of The City University of New York
2900 Bedford Avenue • Brooklyn, New York 11210-2889 • Telephone (718) 951-5102 • Fax (718) 951-4537

# EXHIBIT 8

```
PBS   -  A/P A/R C/R G/L ³P/R³ CTL  MF
Employees (Enter)                    BKLYN COL NON-TAX OPERATING AC
 * 1. Emp no    3717
 * 2. Emp name  ROBINSON, ROBERT B.     21. Regular rate      38.214
   3. Street #  37 Erasmus Street       22. Overtime rate     57.321
   4. City      Brooklyn                23. Special rate1      38.214
   5. State     NY                          Special W-Comp1
   6. Zip code  11226                       Spec description1
   7. Phone #                           24. Special rate2         .00
   8. Soc sec #     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             Special W-Comp2
   9. Birth date                            Spec description2
  10. Marital status   Married         25. Special rate3         .00
  11. Hire date    4/15/91                  Special W-Comp3
  12. Last raise   12/01/03                 Spec description3
  13. Review date                      26. Payment group
  14. Terminate date                   27. Vac hours due     792.33
  15. Emp type     Salary              28. Vac hours paid    196.00
  16. Pay frequency Bi-weekly          29. Sick hours due     60.018
  17. Work Comp class  DBM DBMX        30. Pension plan ?     Y
  18. Home department  0007            31. Distrib wages ?    Y
  19. Salary       2,675.00            32. W-2 ins premium    .00
  20. Wage account #  7000-000         33. Can get tip CR ?   (N/A)
<F1>= nxt employee, <SF1>= prev employee, <F3>= delete employee, <SF7>= more
```



PLAINTIFF'S EXHIBIT 8 Page 1 of 4

Printed 3/12/07 - Monday 6pm

PBS    -    A/P  A/R  C/R  G/L  P/R  CTL  MF
Employees (Enter)

BKLYN COL NON-TAX OPERATING AC
Employee: 3717 ROBINSON, ROBERT B.

34. State tax code   NY-M  NEW YORK - MARRIED        Multi-city/state empl ? N
35. City tax code    NY-M  NYC-RESIDENT-MARRIED
36. # FWT exemptions      7        51. Soc sec xmpt ?  N  Medicare xmpt ? N
37. $ FWT exemption      .00       52. FUI exempt ?    Y
38. # SWT exemptions      3        53. SUI exempt ?    N
39. $ SWT exemption      .00       54. EIC table #     0
40. # emp OST-1 exemp     0        55. Direct dpst ?   N
41. $ emp OST-1 exemp    .00
42. # emp OST-2 exemp     0
43. $ emp OST-2 exemp    .00       56. 401(k) plan ?   N
44. $ empr OST exemp     .00
45. # CWT exemptions      2
46. $ CWT exemption      .00
47. State tax credit     .00

48. Added FWT  .00
49. Added SWT  .00
50. Added CWT  .00
<F5> = extended info, <F6> = notes, <F7> = multi-city/state detail



PLAINTIFF'S
EXHIBIT
8
Page 2 of 4

Employees (Enter)

BKLYN COL NON-TAX OPERATING AC
Employee: 3717 ROBINSON, ROBERT B.



PLAINTIFF'S
EXHIBIT
8
Page 3 of 4

57. Union deduction      .00
    Frequency
    Union G/L acct #

58. Loan deduction       .00
    Frequency
    Balance due

59. Garnish deduct       .00
    Frequency
    Balance due

60. D/E code-1      DBL  NYDBL
    Amt/rate/pct    .50          %
    Frequency       Bi-weekly

61. D/E code-2      PEN  PENSION
    Amt/rate/pct    1.50     percent
    Frequency       B  Bal  Unlimited

62. D/E code-3      B    TDA
    Amt/rate/pct    169.23    per prd
    Frequency       Bi-weekly

63. D/E code-4
    Amt/rate/pct    .00
    Frequency

64. D/E code-5
    Amt/rate/pct    .00
    Frequency

65. D/E code-6
    Amt/rate/pct    .00
    Frequency

66. D/E code-7
    Amt/rate/pct    .00
    Frequency

67. D/E code-8
    Amt/rate/pct    .00
    Frequency

68. D/E code-9
    Amt/rate/pct    .00
    Frequency

<F5> = extended info, <F6> = notes, <F7> = multi-city/state detail

PBS    -   A/P  A/R  C/R  G/L  ³P/R³  CTL  MF
Employees (Enter)

BKLYN COL NON-TAX OPERATING AC
Employee: 3717 ROBINSON, ROBERT B.



PLAINTIFF'S
EXHIBIT
8
page 1 of 4

57. Union deduction      .00
    Frequency
    Union G/L acct #

58. Loan deduction       .00
    Frequency
    Balance due

59. Garnish deduct       .00
    Frequency
    Balance due

60. D/E code-1       DBL  NYDBL
    Amt/rate/pct     .50        %
    Frequency        Bi-weekly

61. D/E code-2       PEN  PENSION
    Amt/rate/pct     1.50       percent
    Frequency        B  Bal  Unlimited

62. D/E code-3       B    TDA
    Amt/rate/pct     169.23     per prd
    Frequency        Bi-weekly

63. D/E code-4
    Amt/rate/pct    .00
    Frequency

64. D/E code-5
    Amt/rate/pct    .00
    Frequency

65. D/E code-6
    Amt/rate/pct    .00
    Frequency

66. D/E code-7
    Amt/rate/pct    .00
    Frequency

67. D/E code-8
    Amt/rate/pct    .00
    Frequency

68. D/E code-9
    Amt/rate/pct    .00
    Frequency

<F5> = extended info,  <F6> = notes,  <F7> = multi-city/state detail

# EXHIBIT 9



| *Sarah Fleming | Female | Accountant | White | Salary increase obtained | Remains in dept | Salary increase |
|---|---|---|---|---|---|---|
| *Jane Lee | Female | Accountant | Asian | Salary increase-unknown | Remains in dept | |
| *Jacqueline Thompson** | Female | Admin Asst | Black | No salary increase | Remains in dept | |
| *Beverly Gregory** | Female | Accountant | Black | No salary increase | Remains in dept | |
| *Kevin Carmine | Male | Accountant | White | Salary increase-unknown | Transfer to another dept | Promotion pending and subsequently promoted |
| "Claire Borrello | Female | Admin Asst | White | Salary increase | Transfer to another dept | Promoted and salary increase |
| "Lavada Lawton | Female | Admin Asst | Black | No salary increase | Transfer to another dept | No promotion/no salary increase |
| *Previously reported to me | "Never reported to me | ** no salary increase since 2003 | | | | |

# EXHIBIT 10

PLAINTIFF'S
EXHIBIT
LD
Page 1 of 8

**Bob Robinson**

| | |
|---|---|
| **From:** | Alan Gilbert |
| **Sent:** | Tuesday, December 19, 2006 7:50 AM |
| **To:** | Milga Morales; Vannessa Green; Dave Bryan; Juanita Hill; Bob Robinson |
| **Cc:** | Lisa DeStefano; Andrew Steketee; Jules R. Levin |
| **Subject:** | CD Transfers for FY2006 |

**Importance:**     High

I am looking at all of the electronic files I received on transfers.  After asking repeatedly, it seems as if Accounting never recorded transfers.  Therefore, individual balances for all entities in the accounting system are incorrect if the entity was involved in any transfers and reports from Auxiliary Accounting never should have been used to give any student government or allocating body a balance.

This is going to involve a huge amount of work to correct and will lead to more questions from the student governments who will most likely want transactional information on expenditures.

As a starting point, please make me copies of the documentation for all approved transfers for records 2963 to 3324.

I need these by the end of the week.

This is the starting point.  I am going to need copies of all transfers since this process began.  The may mean record 1 to the last transfer done.

For FY2007, all transfers must go through the Office of Financial Reporting and Reconcilation without exception.

**ALSO, AND I AM PUTTING THIS IN CAPITAL LETTERS, IN A LARGER FONT, AND IN BOLD FOR EMPHASIS ---- UNDER NO CIRCUMSTANCES SHOULD THE DEPUTY COMPTROLLER'S OFFICE AND/OR AUXILIARY ACCOUNTING GIVE STUDENT AFFAIRS / CENTRAL DEPOSITORY ANY FINANCIAL REPORTS OR INFORMATION.  ALL INFORMATION REQUESTS MUST GO THROUGH MY OFFICE.  IN THE EVENT I AM NOT IN, THEY SHOULD GO TO LISA DESTEFANO. IN THE EVENT NEITHER LISA NOR I ARE IN , THEY SHOULD GO TO ANDREW STEKETEE.  IN THE EVENT, NEITHE LISA NOR ANDREW NOR I ARE IN, THEY SHOULD GO TO VICE PRESIDENT STEVE LITTLE.**

*Alan Gilbert*
*AVP for Finance, Budget, and Planning / Comptroller*
*(718) 951-5102*

1

**Bob Robinson**

PLAINTIFF'S
EXHIBIT
10
page 2066

| | |
|---|---|
| **From:** | Alan Gilbert |
| **Sent:** | Tuesday, December 12, 2006 6:47 AM |
| **To:** | Bob Robinson; Juanita Hill |
| **Cc:** | Jules R. Levin; Lisa DeStefano; Andrew Steketee |
| **Subject:** | RE: Transfers |

I need an update as to the status of this every day, starting today.

Thank you.

*Alan Gilbert*
*AVP for Finance, Budget, and Planning / Comptroller*
*(718) 951-5102*

---

**From:** Alan Gilbert
**Sent:** Monday, December 11, 2006 8:52 PM
**To:** Bob Robinson; Juanita Hill
**Cc:** Jules R. Levin; Lisa DeStefano; Andrew Steketee
**Subject:** Transfers

Bob,

I need a list of all of the transfers you recorded in Passport in FY2006.

Thanks.

Alan

12/12/06


PLAINTIFF'S EXHIBIT
10
page 3 of 6

**Lavada Lawton**

**From:** Jules R. Levin
**Sent:** Friday, February 02, 2007 10:09 AM
**To:** Bob Robinson
**Cc:** Alan Gilbert; Lavada Lawton; Jane Lee; Beverly Gregory
**Subject:** Journal Entries

Bob,

I spoke with Lavada and understand that she has yet to receive journal entries for copying, as requested by Alan.

It is essential that this begin NOW!!

Please submit to Lavada in the following order:

CD, Other Members, Athletics and Recreation, Child Care, Non Tax, Auxiliary Enterprises, Student Center, ACE, ECC, etc.

I have asked Lavada to give me hourly updates on this. Please be sure that this HAPPENS NOW ,AS REQUESTED.

Everyone's cooperation is needed to support this effort.

I expect team work to accomplish this rapidlywithout further supervision from me.

Thanks / Jules

This will be distributed by hand as well to be sure that this is read timely!

Lavada - Please distribute to Bob, Jane and Magi asap.

2/2/2007



PLAINTIFF'S
EXHIBIT

10

page 4 of 6




PLAINTIFF'S
EXHIBIT
10
page 5 of 6

Jules,

Let me be clear on this, I dont like your email specifically, the tone the boldness and the content.

Let me clear on this issue also I have never been supervised by you nor have ever sought your advise on any issue, be it accounting or otherwise, Furthermore, obtaining and copying

journal entries did not nor should involve any form of supervision by you or anyone for that matter. The conversation we had yesterday 2/1/07 in the afternoon is that we are in the process of pulling & copying the backups and this was after we had obtained & emailed all the journal entries.

Let me assure you that nothing had changed

from our conversation ②
yesterday and
that is we are still
in the process of pulling
and copying the backup
as requested.

# UPDATED FORM



PLAINTIFF'S EXHIBIT
10
page 6 of 6

**To:**     Andrew Steketee
         Auxiliary and Fiscal Services

**From:**   **Alan Gilbert**
         Non Tax Levy Funded

**Subject:**  Brooklyn College Authorized Signature Form for **FY 06-07**

**Department:** Non Tax Levy Funded (999)

---

| Name (print) _Alan Gilbert_ | | |
| --- | --- | --- |
| Signature _An albert_ | | |

- ■ All
- ☐ Payroll (timesheet)
- ☐ Accounts Payable
- ☐ BC Mailing Services
- ☐ BC Printworks
- ☐ BC Copy Center

- ☐ Campus Safety & Security (keycards)
- ☐ Purchasing
- ☐ Property Management
- ☐ BC Central Stores
- ☐ BC Central Routing & Receiving
- ☐ TLBR (budget reports)

---

| Name (print) _Juanita Hill_ | | |
| --- | --- | --- |
| Signature _on file_ | | |

- ☐ All
- ☐ Payroll (timesheet)
- ☐ Accounts Payable
- ☐ BC Mailing Services
- ☐ BC Printworks
- ☐ BC Copy Center

- ☐ Campus Safety & Security (keycards)
- ■ Purchasing
- ☐ Property Management
- ☐ BC Central Stores
- ☐ BC Central Routing & Receiving
- ☐ TLBR (budget reports)

---

*Form continues on the reverse side, and must be signed by the appropriate chairperson or department head.* →

Chairperson/Department Head Name_____

Signature_____Date_____

****This form must be signed by the appropriate department head before being submitted****

# EXHIBIT 11



**Office of the AVP for Finance, Budget, and Planning / Comptroller**
Brooklyn College of the City University of New York
1433 Boylan Hall
Brooklyn, NY 11210
718.951.5102



PLAINTIFF'S
EXHIBIT
11
page 1 of 4

## Non-Tax Levy Budget and Accounting Meeting          October 20, 2006

**Members:**   Alan Gilbert, Andrew Steketee, Lisa DeStefano, Emir Ganic, *Hafeezuddin Ahmed,* Patrick Croff III, Giancarlo Falchetto, *Jackie Galang,* Kevin Carmine, *Sally Fleming, Juanita Hill,* Jane Lee, LeeAnne Prestininzi, Bob Robinson, *Beverly Gregory,* Jacqueline Thompson, Desiree Wharton, Alberto Sanchez, Jules Levin

*[Names in italics denote those unable to attend]*

**Notes:**

- The restructuring continues as we streamline operations.

  o   New attendees joining the meetings include Giancarlo, Alberto, and Jules.

  o   LeeAnne has accepted a full-time position. She will be reporting to Emir. She will contribute to the automation of revenue accounting, auxiliary accounting, and the all funds budget.

  o   Jules will work closely with Auxiliary Accounting in terms of the audits, GAAP compliance, and the consistency of procedures and guidelines across all accounts.

  o   Giancarlo and Hafeez will report directly to Andrew, while continuing to work closely with Lisa, Patrick, Bob, Jane, and Jules.

  o   In regards to accounting, we will continue to look at the structure and procedures in terms of what will work best. Jules will vet most of the issues, checking with Juanita, Bob, and the staff, as appropriate.

  o   We will be mindful of having realistic goals and reasonable timeframes to accomplish them.

*Action Item: Andrew will obtain 10 copies of the Strategic Plan 2005-2010 for distribution to the accounting staff and LeeAnne. Anyone who has not received a copy of the plan should contact Andrew. It is important for everyone to understand the College's vision. The distribution should be completed by October 27, 2006.*

- **Student Activity Fees and the BCA Distribution**

  o   We reviewed the chart prepared by Desiree on the Student Activity Fee distribution. From reviewing her report, we can see that the student activity fees are not paid (primarily due to the delayed receipt of financial aid) in a timely manner, and this creates cash flow issues for some entities (primarily the Student Center and Athletics/Recreation).



PLAINTIFF'S
EXHIBIT
11
Page 2 of 4

○ Desiree completed the transfer calendar, as assigned at the prior meeting.

○ In regard to CD, all allocating bodies have agreed to the 7.2% processing fee. Desiree will transfer the student activities fees and Auxiliary Accounting will deposit. Once CD checks are deposited, 7.2% needs to be allocated to the BCA (for all entities that receive a CD student fee allocation, except for the Health Clinic and Athletics/Recreation).



○ Club budgets must reflect the 7.2% reduction.

*Action Item: Bob and Jane will review Desiree's report and the best way to reflect the 7.2% processing fee from an accounting perspective. They will email Alan and Andrew before November 3, 2006 with their comments.*

*Action Item: Lisa and Patrick will review Desiree's report and the best way to reflect the 7.2% processing fee from a budget perspective. They will also prepare a draft reconciliation report. They will email Alan and Andrew before November 3, 2006 with their comments.*

*Action Item: All group members were asked to review the materials and send any comments to Alan and Andrew by November 3, 2006.*

- **Central Depository**

  ○ **Budget** – All is going well. Financial Reporting has caught payment requests that came through with no or insufficient budgets. All budget transfer requests must come from Student Affairs.

  Alan is on the BCA Board and attended a meeting on October 18, 2006. The Board has been recast to ensure its membership is more proactive. Alan's involvement will ensure someone with expertise in budget and accounting is on the Board and that there is communication between CD constituents and the financial staff of the College.

  Alan sent copies of the BCA meeting information to Juanita, Bob, and Lisa. We decided that while this information will be copied by Alan, Student Affairs must officially submit to Financial Reporting before budgets are updated, to be consistent with the flow of other paperwork.

  *Action Item: Lisa and Patrick will contact Dave Bryan in Student Affairs about getting copies of the approved actions. Once received, club budgets will be reviewed and modified. Financial Reporting will then forward the information to Accounting for entry into Passport.*

  The cash flow issues with the Student Center and Athletics/Recreation need to be reviewed.

  *Action Item: Sally will send the daily bank balance information to Alan, Andrew, and the appropriate entities.*

  Beginning balances for all allocating bodies need to be finalized after the audit is completed.

*Action Item: Lisa will follow up with Jules and Bob. Alan, Lisa, and Andrew will follow up with Student Affairs and will discuss how to handle the negative balances associated with CLAS and the Broeklundian.*

PLAINTIFF'S
EXHIBIT
11
Page 3 of 4

- o **Vendor Information** - LeeAnne is working on updating the vendor files and address information for Central Depository and Student Center. Passport and IFAS have different file structures for telephone numbers.

*Action Item: LeeAnne will coordinate this effort. She will report back to Alan, Andrew, and Emir by November 3, 2006.*

- o **Financial Reports** – Currently, Student Affairs receives bi-weekly reports. Dolores requested that she would like to receive the reports twice each week (Monday and Thursday). The request has been submitted to Dean Green for approval. Lisa is meeting with Student Affairs on Tuesday on several pending issues.

*Action Item: Lisa will prepare minutes from the meeting with Student Affairs and will send to Alan and Andrew by October 31, 2006.*

Club Liaisons from Central Depository should review the reports with club leaders to ensure they understand them. One area that clubs should review is checking for duplicate payments. Patrick has been finding these during his review, but if the vendor submits a different invoice number, it will be more challenging for him to find.

- o **Vouchers and Payments** - There are still issues with the process.

Jackie Thompson processes receipt and initial preparation. Hafeez handles review and vouchering. Jane processes certification. Who provides back up for these functions?

*Action Item: Each area should identify back ups for these functions by the next meeting. As we expand this model to all entities this will become even more critical. Communication between everyone also needs to be improved.*

Improvements to the process will include daily cut offs for processing by Hafeez (suggested at the end of the workday) so Jane (Accounting) can review at the start of her day. This will give Kevin (Accounts Payable) ample time to generate the checks.

Hafeez is not authorized to change a payment request in terms of increasing the dollar amount without first bringing the voucher back to Patrick and having Patrick contact John in Central Depository for approval. Hafeez must also notify Patrick if the dollar amount decreases.

*Action Item: Andrew will meet with Hafeez, Lisa, and Patrick. He will send minutes of this meeting to Alan by October 27, 2006.*

*Action Item: Jane will provide a one-hour training session on Passport for Hafeez, Giancarlo, Patrick, Lisa, and Andrew before the next monthly meeting. If she is unable to accomplish this, she must email Alan and Andrew.*

- ▪ **Student Center**



o   Progress continues.  The same successes and challenges with CD are present with the Student Center.

o   Payroll as of September 30, 2006 is currently being reconciled.

> *Action Item:  Alan will review the information Lisa sent to him and send comments by October 27, 2006.*

o   Sally provided several copies of the same information which caused some initial confusion and required some reversals in Financial Reporting.

> *Action Item:  Lisa will discuss with Sally and will report on progress at the next meeting.*

- **Process Review Initiative**

  The following are process initiatives that are longer term in scope.  These will be compiled and worked on strategically, with appropriate goals, objectives, and timelines.

  o   Payroll cycles need to be reviewed to determine if one (or fewer) cycles could work. Standardizing the payroll cycle would lead to greater efficiency.

  o   A standardized voucher would ensure consistency for those who work with these documents.  Sally and Kevin have already collected samples, and have given them to Alan.  An electronic form is a possible enhancement.

  o   An employee policy manual must be written to document consistent policies and expectations across all entities.

  o   There should be a list of documents the accountants should prepare and have available for audits.  This will lead to less emergency work when the auditors arrive.  Since the University is moving toward an earlier audit schedule this becomes even more important.

  o   Procedure manuals need to be written.

  o   The automated signature process for checks needs to have a clearly written process that satisfies guidelines and internal audit issues.

*The next meeting is tentatively scheduled for Tuesday, November 28, 2006 at 10:00 in Student Center, State Lounge, 5th floor.*

# EXHIBIT 12

## Bob Robinson

| | |
|---|---|
| **From:** | Alan Gilbert |
| **Sent:** | Tuesday, December 21, 2004 9:32 AM |
| **To:** | Bob Robinson |
| **Subject:** | RE: Non Tax Financial Report |



Bob,

I just checked.  Jules sent it to Juanita and you and copied me.

Are you in next week?  My calendar is a little better then.

*Alan Gilbert*
*AVP for Budget and Planning*
*(718) 951-5102*

-----Original Message-----
**From:** Bob Robinson
**Sent:** Tuesday, December 21, 2004 9:24 AM
**To:** Alan Gilbert
**Subject:** RE: Non Tax Financial Report

Alan, are you sure its from me?  However, if you did in fact received that report, there are some procedural problems that I need to discuss with you, at your convenience. Thanks.

-----Original Message-----
**From:** Alan Gilbert
**Sent:** Tuesday, December 21, 2004 9:19 AM
**To:** Bob Robinson; Juanita Hill
**Subject:** RE: Non Tax Financial Report

The auditor's report you emailed over yesterday.

Page 3

*Alan Gilbert*
*AVP for Budget and Planning*
*(718) 951-5102*

-----Original Message-----
**From:** Bob Robinson
**Sent:** Tuesday, December 21, 2004 9:17 AM
**To:** Alan Gilbert; Juanita Hill
**Subject:** RE: Non Tax Financial Report

Alan, please elaborate. Are you referring to June 30, 2004 and the comparison originated by Auxiliary Accounting? Thanks

-----Original Message-----
**From:** Alan Gilbert
**Sent:** Monday, December 20, 2004 9:00 PM
**To:** Juanita Hill; Bob Robinson
**Subject:** Non Tax Financial Report

I noticed the non tax financial report statement of revenues, etc had the same numbers in 2004 as in 2003.

*Alan Gilbert*
*AVP for Budget and Planning*
*ext. 5102*



PLAINTIFF'S
EXHIBIT

12

Page 2 of 4

12/22/04

## Bob Robinson

PLAINTIFF'S
EXHIBIT
12
Page 3 of 4

**From:** Bob Robinson
**Sent:** Wednesday, December 22, 2004 1:39 PM
**To:** Juanita Hill
**Subject:** FW: FW: Financials-Drafts

Fyi, this is starters, as you can see an apology was given, please look carefully at the time line.

-----Original Message-----
**From:** Bob Robinson
**Sent:** Tuesday, December 21, 2004 2:05 PM
**To:** 'Anny.Cho@rsmi.com'
**Subject:** RE: FW: Financials-Drafts

Anny, don't worry about it, things happen. The portion that could be reviewed was okay; therefore, as soon as you get me the revised we will expedite. Have a great holidays.

    -----Original Message-----
    **From:** Anny.Cho@rsmi.com [mailto:Anny.Cho@rsmi.com]
    **Sent:** Tuesday, December 21, 2004 2:00 PM
    **To:** Bob Robinson
    **Subject:** Re: FW: Financials-Drafts

    Thank you, Bob.
    I apologize for the Nontax financials.  There were technical difficulties with the file.  The
    revised version will be sent to you by the end of today.

    Anny Cho
    Audit Associate
    RSM McGladrey, Inc
    750 3rd Avenue Fl. 9
    New York, NY 10017
    212.856.4337
    anny.cho@rsmi.com
    www.mcgladrey.com

    This e-mail is only intended for the person(s) to whom it is addressed and may contain
    confidential information. Unless stated to the contrary, any opinions or comments are
    personal to the writer and do not represent the official view of the company. If you have
    received this e-mail in error, please notify us immediately by reply e-mail and then delete this
    message from your system. Please do not copy it or use it for any purposes, or disclose its
    contents to any other person. Thank you for your cooperation.

    "Bob Robinson" <Bob@brooklyn.cuny.edu>

               **To:**   "Anny.cho@rsmi.com" <Anny.cho@rsmi.com>
               **cc:**

12/21/2004 01:06 PM                     Subject:    FW: Financials-Drafts


PLAINTIFF'S
EXHIBIT
12
page 4 of 4

Anny, as promised attached is the Childcare's MDA. Thanks.


-----Original Message-----
**From:** Bob Robinson
**Sent:** Monday, December 20, 2004 10:55 AM
**To:** 'Anny.Cho@rsmi.com'
**Subject:** FW: Financials-Drafts

Anny, I took a quick glance at Non-tax and the 2004 and 2003 numbers are the same for the income statement and also the management and general expenses. Please email me the changes. Thanks.

-----Original Message-----
**From:** Bob Robinson
**Sent:** Monday, December 20, 2004 10:36 AM
**To:** 'Anny.Cho@rsmi.com'
**Subject:** RE: Financials-Drafts

Hi Anny,
    I will review the draft of Om and Non tax and get back to you. I am making the final changes to Child Care and will email to you by tomorrow. Any questions relating to Child Care, Om and Non-tax should be directed to me. Thanks.
-----Original Message-----
**From:** Anny.Cho@rsmi.com [mailto:Anny.Cho@rsmi.com]
**Sent:** Friday, December 17, 2004 4:33 PM
**To:** jlevin@brooklyn.cuny.edu
**Subject:** Financials-Drafts


Hello Jules,
I have attached the Financials (draft copies) for ACE, ECC, OM, and Non Tax.


Anny Cho
Audit Associate
RSM McGladrey, Inc
750 3rd Avenue Fl. 9
New York, NY 10017
212.856.4337
anny.cho@rsmi.com
www.mcgladrey.com


This e-mail is only intended for the person(s) to whom it is addressed and may contain confidential information. Unless stated to the contrary, any opinions or comments are personal to the writer and

12/22/04

# EXHIBIT 13

## Jane Lee

**From:**   Jane Lee
**Sent:**   Friday, February 02, 2007 6:40 PM
**To:**   Jules R. Levin
**Subject:** General Journal entries backups

PLAINTIFF'S
EXHIBIT
13

Jules,

Please note that copies of the following general ledger entries were delivered today, Friday, February 2, 2007 to your office:

Auxilary
Athletics
Central Depository
ACE
Other Member
ECC

When I called you today at approximately 12:15 pm, I had to put you on hold twice. On getting back to the phone on the second occasion you had already hung up.

Between the two times that I had to put you on hold, you asked me the following questions:

" Do you want directions to my office?"

I had to put you on hold at this point and you repeated once more

"Do you want directions to my office?"
Upon my asking what this is about, you responded,

"Didn't you get the memo this morning?"
"Don't you understand English?"
"Can I have a response to my questions?"

I had to put you on hold for a second time, and when I got back to the phone you had already hung up.


Bob

Ps. I am not using my email.

2/2/2007

# EXHIBIT 14



PLAINTIFF'S
EXHIBIT
14
page 1 of 2

Donal,

I **don't** appreciate and **don't** take your comment about me kindly. I am not responsible for your lack of understanding of accounting and its terminologies, thus, to be effective, all my explanations must be broken down in a layman's language. Case in point, yesterday I tried to explain to all three individuals, including you, what a fixed asset schedule and a fixed asset register are, without success; furthermore based upon questions asked, there appear to be a complete lack of understanding and interpretation of a basic fixed asset schedule. Also, your email below further confirms my point about the lack of understanding of a fixed assets schedule.

In addition, I explained at the meeting that the detail of each year would be available for that particular year via the trial balance, if a separate list is not kept. Also, be aware that the detail of the 2007 additions was provided.

And, last but not least, I don't withhold information to anyone. I always give a direct answer to the question(s) asked.

---

**From:** Donal Christian
**Sent:** Wednesday, August 08, 2007 12:49 AM
**To:** Beverly Gregory; Bob Robinson
**Subject:** RE: FA Schedules

Bev,

Thank you for the information. However, I have several questions regarding the FA schedules but I needed you to answer them because you had created these schedules for CC and CD. Correct?

I am sure that Bob has informed you that we needed a detail list of all F/A for CC and CD similar to what you had provided for Auxiliary and Student Center.

Moving forward, please do not allow anyone to provide you with summary information without the supporting backup documentation.

Also, please make sure that you use formulas for the F/A schedule for all the entities and do not type the number in the excel spreadsheet manually. If you like me to give a quick excel tour, please let me know.

As you know from your experience with Bob, Bob will not provide a direct answer until you tie him down so please make sure that you follow-up with Bob and request supporting backup documentation for all the entries. You and I both know that Bob has this information or he knows where the information is for the F/A for CC and CD. I am sure Bob will not tell you and/or me to go an extract the information from the T/B. Right Bob?

Bob, please assist Bev and provide her with all the backup documentation that she needs for the F/A schedule for CC and CD.  Thanks.

Bev, please have this information to me by the end of this week.

Also, please provide me a copy of the F/A schedule for FY2006.

As I have informed Bob, I will not accept summary information without supporting backup documentation. This has nothing to do with trust. We need to make sure that the information we have in a summary format, can be reconciled with the supporting backup documentation.

Call me if you have any questions.

Thank you,

Donal



PLAINTIFF'S EXHIBIT
4
page 2 of 2

---

**From:** Beverly Gregory
**Sent:** Thu 8/2/2007 6:55 PM
**To:** Donal Christian; Bob Robinson; Rabia Azhar
**Subject:** RE: FA Schedules

-----Original Message-----
**From:** Donal Christian
**Sent:** Wednesday, August 01, 2007 10:39 PM
**To:** Beverly Gregory; Bob Robinson; Rabia Azhar
**Subject:** RE: FA Schedules

Dear Bev,

Please note that the information is needed a/s/a/p so that we can complete the request for CUNY.

Please have the completed no later than Thursday August 2, 2007 at 12pm.

Rabia/Bob, please assist Bev with this request. I want this completed on time and by the due date.

Also, please let me know what is preventing the Fixed Asset Schedule from being completing.

Thank you,

Donal

---

**From:** Beverly Gregory
**Sent:** Wed 8/1/2007 6:53 PM
**To:** Donal Christian
**Subject:**

Donal,

I know that you need the F/A schedule for those 2 entities right now, I need some more time to complete. I'll have them to you by 8/8/07.

# EXHIBIT 15



PROBATIONARY AND SERVICE REPORT

BROOKLYN COLLEGE

OF THE CITY UNIVERSITY OF NEW YORK



PLAINTIFF'S
EXHIBIT
15

Please return to the Personnel Office by __May 15, 2007__

| EVALUATION PERIOD | NAME OF EMPLOYEE |
|---|---|
| FROM: ~~April 1, 2006~~ *April 9, 2007* <br> TO : ~~March 31, 2007~~ *November 16, 2007* | *Robert Robinson* |

| TYPE OF EVALUATION | OFFICE |
|---|---|
| PROBATIONARY <br><br> 1st___;  2nd___;  3rd___; <br><br> FINAL___;  SPECIAL (      )___ | *Auxiliary Accounting* <br> TITLE IN WHICH RATED <br> *Senior Accountant* <br> PERMANENT TITLE IF OTHER THAN ABOV |

[X] ANNUAL

STATUS:

☐ PROBABLE PERMANENT      ☐ PERMANENT
☐ PROVISIONAL/TEMPORARY   ☐ HOURLY

---

INSTRUCTIONS FOR THE USE OF PROBATIONARY AND SERVICE REPORT

1. Carefully read the definitions for each category listed on page 2.

2. In each instance check off the statement(s) that best describe the employee's performance the factor being considered. Add any comments which you feel will help in making a fair appraisal.

3. When rating each factor, call to mind instances that are typical of the employee's work performance and behavior. Do not be overly influenced by unusual cases which are not typic

4. Be fair to yourself, the employee, and the College. Make your ratings with the utmost care and thought; it should represent a fair and objective judgment of the employee's work performance during rating period.

5. The summary rating on page 4 should be in general agreement and be consistent with the ratings given for the individual factors on pages 2 and 3.

In my opinion the summary judgment best expressing your work performance for the period covered by this report is

☐ SATISFACTORY          ☑ UNSATISFACTORY

This report represents my best judgment of the value of this employee's work service during the period stated and is based upon personal observations and/or knowledge of his/her work

I RECOMMEND:          (Check one)    ☑ Continued employment

                                      ☐ Employment be discontinued

                                      ☐ Tenure (for final report only)

SIGNATURE OF RATER _____ TITLE _Director_ DATE _11/21/07_

. . . . . . . . . . . . . . . . . . .

(To be completed where it has been determined to be appropriate by the Department or Personnel Officer)

I have reviewed the report of the immediate supervisor and have indicated my disagreement, if any. This report is accurate according to my best knowledge and belief.

COMMENT: _____

_____

_____

SIGNATURE OF REVIEWER _____ TITLE _Asst Comptroller_ DATE _12/5/07_

. . . . . . . . . . . . . . . . . . .

TO THE EMPLOYEE: The summary judgment shown above is the rating assigned by your supervisor and reviewed on a higher level. Only "unsatisfactory" (below standard) ratings are subject to appeal to the College Personnel Officer.

I have reviewed this report on the date indicated and have had the opportunity to discuss it with my rating supervisor(s). My signature does not necessarily signify agreement. I understand that I may submit a rebuttal.

SIGNATURE OF EMPLOYEE _____ TITLE _____ DATE _____


PLAINTIFF'S EXHIBIT
15
Page 2 of 6

. The following evaluation of your work performance has been made considering those factors applicable to your work assignment based on your job duties and responsibilities. More than one statement may be applicable in evaluating the factors in the left margin.

| | | |
|---|---|---|
| **1. PRODUCTIVITY**<br>_Quality of Work_—Considered were the accuracy, efficiency, completeness of your work and dependability of results. Volume of work was not considered.<br><br>_Quantity of Work_—Only considered was the amount of work produced together with the necessity for close supervision. | ✓ Does not meet minimum<br>___ standards<br>___ Frequent and excessive<br>___ errors<br>___ Often unacceptable<br><br>✓ Does not meet minimum<br>___ standards<br>___ Very slow worker<br>___ Requires close super-<br>vision | ✓ Careless, inclined to make<br>___ mistakes, work barely<br>___ acceptable<br>✓ Improvement needed<br><br>✓ Works at slow pace<br>✓ Improvement needed |
| **2. RELATIONSHIP WITH OTHERS**<br>Effectiveness in working with supervisors, subordinates, fellow employees and public. Traits considered were tact, courtesy, self-control and discretion. | ___ Not effective in working<br>with others<br>___ Often antagonizes those<br>with contact<br>___ Lacks tact<br>___ Needs to be more bus-<br>inesslike<br>___ Poor attitude<br>✓ Argumentative | ✓ Needs improvement in<br>attitude and manner<br>✓ Has tendency to resent<br>taking direction from<br>supervisor |
| **3. WORK HABITS**<br>Considered was your attitude toward your work, safe and effective use of personnel, materials and equipment, compliance with rules, regulations and supervision. Other personal habits as they may affect your work and use of times | ✓ Undependable<br>✓ Needs constant watching<br>✓ Does not follow pre-<br>scribed work proced-<br>ures<br>___ Little interest in work | ✓ Gives up easily<br>___ Has some difficulty in<br>following prescribed work<br>procedures<br>___ Needs to show more interest<br>in work |
| **4. JOB KNOWLEDGE**<br>Considered was basic knowledge of job, familiarity with other departmental functions related to job; understanding and observance of specific job duties, ability to learn new assigned tasks and acquire necessary skills | ___ Definite lack of know-<br>ledge<br>___ Very little understand-<br>ing of job duties<br>___ Needs considerable<br>instruction | ___ Inadequate knowledge of<br>duties<br>✓ Understanding of job duties<br>not sufficient |
| **5. ATTENDANCE & PUNCTUALITY**<br>Considered were frequency and number of absences and latenesses. Also observance of lunch hour and break periods. | ✓ Excessive absence or<br>tardiness<br>✓ May be absent from work<br>without adequate notice<br>✓ Abuses lunch hour and<br>work break | ___ Lax in attendance and<br>reporting for work on time<br>___ Improvement needed in<br><br>_____ |
| **6. PROMOTABILITY**<br>Considered to be an expression of your supervisor's opinion with respect to your ability to progress | ✓ Has not demonstrated<br>overall qualities<br>needed for advancement | ___ Improvement needed before<br>can be recommended for<br>promotion |
| NOTE: Applicable for Annual<br>Evaluation of Permanent<br>Staff Only | | |

PLAINTIFF'S
EXHIBIT
15
Page 3 of 4

COMMENTS

| | | | |
|---|---|---|---|
| __ Work generally accept-able<br>__ Occasional errors<br>__ Good quality | __ Work seldom needs checking<br>__ Consistently of high quality | __ Exceptionally accurate and capable | _See attached Letter_ |
| __ Volume of work gen-erally meets standards<br>__ Needs normal super-vision | __ Turns out good volume<br>__ Requires little super-vision<br>__ Accomplishments consis-tently high | __ Unusually high results and volume | |
| __ Works well with others<br>__ Good attitude<br>__ Accepts constructive criticism<br>__ Tries to be coopera-tive | __ Very effective in deal-ing with public and associates<br>__ Exercises discretion and tact | __ Stimulates teamwork & good attitude in others<br>__ Exceptional in dealing with public and associates | |
| __ Generally acceptable work | __ Consistently up to and somewhat above work standards | __ Exceptional work habits and attitude toward job<br>__ Seldom requires super-vision | |
| __ Has adequate knowledge of duties<br>__ Needs a little addi-tional instruction | __ Good knowledge of duties. Well informed<br>__ Occasionally needs direction | __ Excellent understand-ing of job assignments<br>__ Requires very little direction. Extremely capable | |
| __ Generally acceptable | __ Very good attendance record<br>__ Rarely tardy<br>__ Prompt in lunch hours and break periods | __ Excellent overall attendance record | |
| __ Should be considered for promotion | __ Willing to accept responsibility. Recom-mend for promotion | __ Excellent candidate for promotion. Can be recommended without reservation | |

PLAINTIFF'S
EXHIBIT

15

Page 6 of 6

# EXHIBIT 16

**To:**        Donal Christian,  Director of Finance and Planning

**Bcc:**       Christoph Kimmich,  President

**From:**      Bob Robinson,  Accounting Manager  *Rob Robinson*

**Date:**      December 10, 2007

**Subject:**   Evaluation/Urgent Response Requested



PLAINTIFF'S EXHIBIT 16 page 1 of 2

I)   Please note, this memo and the contents herein were prepared with an in-depth knowledge of the following applicable areas:

    a) Labor law inclusive of employee and employer rights in the workplace: Title-VII of the 1964 Civil Rights Act.
    b) Internal revenue code as adopted by IRS including the strict guidelines relating to employees vs. non-employees and their rights.
    c) The Sarbanes-Oxley Act- Sec 404
    d) A solid accounting knowledge in both theory and practice.

II)   A staff evaluation meeting was held on 12/03/2007 between Donal Christian, Director of Finance and Planning and myself, Bob Robinson, Accounting Manager. During the meeting, which occurred between 12 noon and 2:30 pm, my staff evaluation was discussed.  It was immediately apparent that an egregious error had been made on my written evaluation. My job title was incorrectly and erroneously stated.

In the meeting I informed Donal Christian of this error and asked for its correction and re-evaluation based on my proper title.  Additionally, I requested documentation supporting the evaluation; only after these requirements were made would I address the evaluation's substance.  Donal Christian promised to provide such documents and a follow up meeting/response was to be held the following day 12/4/07, at the latest.

No meeting or response was held until 12/7/07 at 1:30 pm.  Donal Christian and I were again the only ones present and a copy of my evaluation with details was hastily thrust upon me.  Mr. Christian urged me to sign the evaluation and details immediately, without an adequate opportunity to review the materials. I politely refused to be coerced into signing the documents. At this juncture, Mr. Christian again requested my signature, while explaining that I would not forfeit my chance to respond and also requesting a time frame for my response in order for him to "continue with the procedure."  Having written numerous staff evaluation during my prior years and as recent as, on or about, June 2007, I know this was an improper procedure and therefore, I did not sign it.

While reviewing my staff evaluation later that day, I noticed that the job title was still incorrect and the evaluation had not been revised.  The following questions must be answered before I can properly address the evaluation:



PLAINTIFF'S
EXHIBIT
16
page 2 of 2

1)    Was my job title changed?

2)    If the answer to question #1 is in the affirmative, when was the title changed?

3)    If the answer to question #1 is in the affirmative, please provide written documentations of this. **" I am going on record to state that I am completely unaware of any such correspondence."**

4)    If documentations are provided in response to question #3, please indicate by what means this was communicated to me. **" I am going on record to state that I have never received any such documents communicating such."**

5)    If answer to question # 1 is in the affirmative, was a meeting held to inform me of the change?

6)    If the answer to question #1 is not in the affirmative, please explain why on my evaluation, which was discussed on Monday, December 3, 2007 and presented to me on Friday December 7, 2007, my job title, is improperly stated.

7)    If the answer to question #1 is not in the affirmative, please explain why my evaluation was prepared with this improper job title.

8)    If the answer to question #1 is in the affirmative, does this title change reflect a promotion or a demotion?

9)    If the answer to question #8 is a demotion, when did this demotion occur?

10)   If the answer to question #9 is in the affirmative, please indicate whether or not supporting documents are available.

11)   If the answer to question #10 is in the affirmative, please provide me with such documents. **" I am going on record to state that I have never received such documents."**

12)   If the answer to question #10 is not the affirmative, please explain why there are none.

13)   If the answer to question #8 indicates a promotion, please inform me how this change was communicated.

14)   Please provide supporting documentation to indicate a promotion, if applicable. **" I am going on record to state that I have no prior knowledge of such documents."**

15)   If answer to question #14 indicates no supporting documents, please explain why there are none.

16)   Please provide me with copies of **all** my job evaluations.  I should have already duly signed these evaluations.

17)   If all my job evaluations are not available, please explain the reasons why not.

III)    As outlined above, please provide me with the requested information so that I can address each line item detail of your evaluation of me, whether or not you had addressed it in detail as requested on Monday, December 2007 and received on Friday, December 7, 2007.

**This response was presented to Donal Christian on Wednesday, December 12, 2007 in James Hall Rm. 0301 of Brooklyn College in Brooklyn, New York.**

# EXHIBIT 17



**BROOKLYN**

**COLLEGE**



PLAINTIFF'S
EXHIBIT
17

December 21, 2007

Dear Bob,

I write in response to your memo dated December 10, 2007, in response to your annual evaluation. As you know, Auxiliary Accounting has undergone reorganization since early 2006. Juanita Hill changed your title to Senior Accountant in 2006. That you were no longer the Manager of Auxiliary Accounting is evident by the fact that the position of Manager of Auxiliary Accounting was advertised in January 2007. Subsequently, you and others in the department were advised in an e-mail dated March 11, 2007 from Alan Gilbert that a candidate for this position would be coming to campus and that you and the other staff members were expected to attend the interview. Therefore, your claim that you did not know that your title was changed is not credible.

As you are also aware, many of the functions you held as Manager of Auxiliary Accounting were taken away from you since Ms. Hill changed your title. You were given job duties commensurate with those of a Senior Accountant, and as your evaluation indicates, you failed to perform these functions in a timely and accurate manner.

If you wish, you may submit a rebuttal to the evaluation. I will also include your memo objecting to the title in which you were evaluated in your file.

Sincerely yours,

Donal Christian
Director of Finance and Planning

**Office of Finance and Planning**

# EXHIBIT 18

Brooklyn College Directory



Home   Site Map   Contact Us   Request Information   Calendar   Directory   Employme

Home : Directory

# Brooklyn College Directory Search

About Brooklyn College
Admissions
Academics
Our Faculty
Campus Life
News & Events
Visit BC
Alumni
Library

WebCentral / WebSIMS
Support BC

Quick Links ▾   Go



PLAINTIFF'S EXHIBIT 13 page 1 of 2

| Department | Auxiliary Accounting |
| --- | --- |
| Manager | Robert Robinson |
| Location: | 1146 Boylan Hall |
| Telephone: | 718-951-5241 |
| Fax: | 718-951-4440 |
| Staff Listing | Click here |



BROOKLYN COLLEGE
2900 Bedford Avenue, Brooklyn, NY 11210   718.951.5000



Brooklyn College Directory



PLAINTIFF'S
EXHIBIT
18
Page 2 of 2

Page 1 of 2

Home   Site Map   Contact Us   Request Informatic



Home : Directory

# Brooklyn College Directory Search

- About Brooklyn College
- Admissions
- Academics
- Our Faculty
- Campus Life
- News & Events
- Visit BC
- Alumni
- Library

- WebCentral / WebSIMS
- Support BC

Quick Links ▾   Go

| Name/ Title | Location | Phone |
| --- | --- | --- |
| Fleming, Sally | 1146 Boylan Hall | 718-951-5241 |
| Gregory, Beverley | 1146 Boylan Hall | 718-951-5241 |
| Lee, Jane | 1146 Boylan Hall | 718-951-5241 |
| Robinson, Robert Manager | 1148 Boylan Hall | 718-951-5241 |



BROOKLYN COLLEGE
2900 Bedford Avenue, Brooklyn, NY 11210   718.951.5000

# EXHIBIT 19





Home : Directory

# Brooklyn College Directory Search Results

- ⊙ About Brooklyn College
- ⊙ Admissions
- ⊙ Academics
- ⊙ Our Faculty
- ⊙ Campus Life
- ⊙ News & Events
- ⊙ Visit BC
- ⊙ Alumni
- ⊙ Library

- ⊙ WebCentral / WebSIMS
- ⊙ Support BC

Quick Links [ ▾ ]  Go

| Name/ Title | Location | Phone | Email Address | Web Page |
|---|---|---|---|---|
| Fleming, Sally | 1146 Boylan Hall | 718-951-5241 | sfleming@ brooklyn.cuny.edu | |
| Gregory, Beverley | 1146 Boylan Hall | 718-951-5241 | bgregory@ brooklyn.cuny.edu | |
| Lee, Jane | 1146 Boylan Hall | 718-951-5241 | jlee@ brooklyn.cuny.edu | |
| ██████████████ Management | 1148 Boylan Hall | 718-951-5241 | bob@ brooklyn.cuny.edu | |



PLAINTIFF'S
EXHIBIT
19
page 1 of 2



BROOKLYN COLLEGE
2900 Bedford Avenue, Brooklyn, NY 11210   718.951.5000
© 2006. Privacy Statement. Contact the Webmaster.


BROOKLYN COLLEGE IS CUNY

# EXHIBIT 20

**Bob Robinson**

| | |
|---|---|
| **From:** | Alan Gilbert |
| **Sent:** | Tuesday, May 01, 2007 12:26 PM |
| **To:** | Bruce Filosa; Bob Robinson |
| **Cc:** | Milga Morales; Donal Christian |
| **Subject:** | RE: Transfer of Funds |

```
┌─────────────────┐
│   PLAINTIFF'S   │
│    EXHIBIT      │
│      20         │
└─────────────────┘
```

Bruce,

Please send these to Donal Christian from now on.  Donal is now the Director of the area.

Thanks.

Alan

**From:** Bruce Filosa
**Sent:** Tue 5/1/2007 12:22 PM
**To:** Bob Robinson
**Cc:** Alan Gilbert; Milga Morales
**Subject:** Transfer of Funds

May 1, 2007

To:      Bob Robinson

         Auxiliary Accounting

From:    Bruce Filosa

         Director of Recreation, Intramurals and
Athletics

Re:      Transfer of Funds

Please transfer twenty-five thousand, four hundred and
thirty-five dollars and seventy five cents ($25,358.75)
from the Recreation, Intramural and Athletics Payroll
Account to the Brooklyn College Non-Tax Operating
Account, to cover reimbursement of the salary of
Bruce Filosa from January 1, 2007 through March 31,
2007.

Thank You.

5/2/07

# EXHIBIT 21

PLAINTIFF'S
EXHIBIT

21

**To:**        Donal Christian, Director of Finance and Planning

**From:**     Bob Robinson, Accounting Manager *RRobinson*

**Date:**     December 28, 2007

**Subject:**   Evaluation/Urgent Response Requested

You have failed to answer all questions in their entirety in your December 21, 2007 response, as I requested on December 10, 2007. As a result, I am still eagerly awaiting an adequate response in order to proceed and properly address the staff evaluation of December 3, 2007.

Notably, in your response you wrote "Juanita Hill changed your title to Senior Accountant in 2006." Please note that no such communication took place with me, by way of writing, verbally or otherwise. **"I am going on record to state that I am completely unaware of any such change in 2006 or anytime prior to or subsequent to 2006."**

Please note that my intention is not to drag out this issue; therefore, once again, I request that this situation be treated with utmost priority and a timely and complete response be given as requested on December 10, 2007.

# EXHIBIT 22



**BROOKLYN**

**COLLEGE**



PLAINTIFF'S
EXHIBIT
22

January 15, 2008

Dear Bob,

I write in response to your memo dated December 28, 2007.  The letter given to you on December 20, 2007 addressed the change in your title to Senior Accountant.

It is of paramount importance that you focus on the performance issues indicated in the evaluation so that you can improve to meet the expectations for a Senior Accountant.

If you wish, you may submit a rebuttal to the evaluation.  I will also include this memo in your file.

Sincerely yours,

Donal Christian
Director of Finance and Planning

**Office of Finance and Planning**

Brooklyn College of The City University of New York

# EXHIBIT 23



PLAINTIFF'S EXHIBIT 23 Page 1 of 1

PROBATIONARY AND SERVICE REPORT

BROOKLYN COLLEGE

OF THE CITY UNIVERSITY OF NEW YORK

Please return to the Personnel Office by _____



NAME OF EMPLOYEE

Robert Robinson

OFFICE

Auxiliary Accounting

TITLE IN WHICH RATED

Senior Accountant

PERMANENT TITLE IF OTHER THAN ABOVE

EVALUATION PERIOD

FROM : November 19, 2007
TO : January 18, 2008

TYPE OF EVALUATION  PROBATIONARY

1st ____ ; 2nd ____ ; 3rd ____ ;

FINAL ____ ; SPECIAL ( ___ )-_____

☒ ANNUAL

STATUS:

☐ PROBABLE PERMANENT   ☐ PERMANENT
☐ PROVISIONAL/TEMPORARY  ☐ HOURLY

INSTRUCTIONS FOR THE USE OF PROBATIONARY AND SERVICE REPORT

1. Carefully read the definitions for each category listed on page 2.

2. In each instance check off the statement(s) that best describe the employee's performance in the factor being considered. Add any comments which you feel will help in making a fair appraisal.

3. When rating each factor, call to mind instances that are typical of the employee's work performance and behavior. Do not be overly influenced by unusual cases which are not typical.

4. Be fair to yourself, the employee, and the College. Make your ratings with the utmost care and thought; it should represent a fair and objective judgment of the employee's work performance during rating period.

5. The summary rating on page 4 should be in general agreement and be consistent with the ratings given for the individual factors on pages 2 and 3.

PLAINTIFF'S EXHIBIT
23
Page 2 of 4

In my opinion the summary judgment best expressing your work performance for the period covered by this report is

☐ SATISFACTORY          ☑ UNSATISFACTORY

This report represents my best judgment of the value of this employee's work service during the period stated and is based upon personal observations and/or knowledge of his/her work

I RECOMMEND:        (Check one)

☐ Continued employment

☑ Employment be discontinued

☐ Tenure (for final report only)

SIGNATURE OF RATER _____ TITLE Director _____ DATE 2/5/08

(To be completed where it has been determined to be appropriate by the Department or Personnel Officer)

I have reviewed the report of the immediate supervisor and have indicated by disagreement, if any. This report is accurate according to my best knowledge and belief.

COMMENT: _____

SIGNATURE OF REVIEWER Chandler _____ TITLE AVP/Comptroller ___ DATE 2/15/08

TO THE EMPLOYEE: The summary judgment shown above is the rating assigned by your supervisor and reviewed on a higher level. Only "unsatisfactory" (below standard) ratings are subject to appeal to the College Personnel Officer.

I have reviewed this report on the date indicated and have had the opportunity to discuss it with my rating supervisor(s). My signature does not necessarily signify agreement. I understand that I may submit a rebuttal.

SIGNATURE OF EMPLOYEE _____ TITLE _____ DATE _____

B. The following evaluation of your work performance has been made considering those factors applicable to your work assignment based on your job duties and responsibilities. More than one statement may be applicable in evaluating the factors in the left margin.

**1. PRODUCTIVITY**
Quality of Work-Considered were the accuracy, efficiency, completeness of your work and dependability of results. Volume of work was not considered.

Quantity of Work-Only considered was the amount of work produced together with the necessity for close supervision.

- Does not meet minimum standards
- Frequent and excessive errors
- Often unacceptable

— Careless, inclined to make mistakes, work barely acceptable
— Improvement needed

- Does not meet minimum standards
- Very slow worker
- Requires close super-vision

— Works at slow pace
— Improvement needed

**2. RELATIONSHIP WITH OTHERS**
Effectiveness in working with super-visors, subordinates, fellow employ-ees and public. Traits considered were tact, courtesy, self-control and discretion.

- Not effective in working with others
- Often antagonizes those with contact
- Lacks tact
- Needs to be more bus-inesslike
- Poor attitude
- Argumentative

— Needs improvement in attitude and manner
— Has tendency to resent taking direction from supervisor

**3. WORK HABITS**
Considered was your attitude toward your work, safe and effective use of personnel, materials and equip-ment, compliance with rules, regu-lations and supervision. Other personal habits as they may affect your work and use of times

- Undependable
- Needs constant watching
- Does not follow pre-scribed work proced-ures
- Little interest in work

— Gives up easily
— Has some difficulty in following prescribed work procedures
— Needs to show more interest in work

**4. JOB KNOWLEDGE**
Considered was basic knowledge of job, familiarity with other departmental functions related to job;understand-ing and observance of specific job duties,ability to learn new assigned tasks and acquire neces-sary skills

- Definite lack of know-ledge
- Very little understand-ing of job duties
- Needs considerable instruction

— Inadequate knowledge of duties
— Understanding of job duties not sufficient

**5. ATTENDANCE & PUNCTUALITY**
Considered were frequency and number of absences and latenesses.Also observance of lunch hour and break periods.

- Excessive absence or tardiness
- May be absent from work without adequate notice
- Abuses lunch hour and work break

— Lax in attendance and reporting for work on time
— Improvement needed in

**6. PROMOTABILITY**
Considered to be an expression of your supervisor's opinion with res-pect to your ability to progress

NOTE:Applicable for Annual Evaluation of Permanent Staff Only

- Has not demonstrated overall qualities needed for advancement

— Improvement needed before can be recommended for promotion



PLAINTIFF'S
EXHIBIT
23
Pg 3 5 4

PLAINTIFF'S
EXHIBIT
23
Page 3 of 4

| Category | (Lower) | (Middle) | (Higher) | COMMENTS |
|---|---|---|---|---|
| Quality | Work generally acceptable / Occasional errors / Good quality | Work seldom needs checking / Consistently of high quality | Exceptionally accurate and capable | See Attached Letter |
| Volume | Volume of work generally meets standards / Needs normal supervision | Turns out good volume / Requires little supervision / Accomplishments consistently high | Unusually high results and volume | |
| Cooperation | Works well with others / Good attitude / Accepts constructive criticism / Tries to be cooperative | Very effective in dealing with public and associates / Exercises discretion and tact | Stimulates teamwork & good attitude in others / Exceptional in dealing with public and associates | |
| Work habits | Generally acceptable work | Consistently up to and somewhat above work standards | Exceptional work habits and attitude toward job / Seldom requires supervision | |
| Knowledge | Has adequate knowledge of duties / Needs a little additional instruction | Good knowledge of duties / Well informed / Occasionally needs direction | Excellent understanding of job assignments / Requires very little direction / Extremely capable | |
| Attendance | Generally acceptable | Very good attendance record / Rarely tardy / Prompt in lunch hours and break periods | Excellent overall attendance record | |
| Promotion | Should be considered for promotion | Willing to accept responsibility / Recommend for promotion | Excellent candidate for promotion / Can be recommended without reservation | |