UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ROBERT ROBINSON, *pro se*,

                Plaintiff,

      - against -

BROOKLYN COLLEGE,

                Defendant.
------------------------------------------------------------ x

**MEMORANDUM AND ORDER**

09-CV-2174 (DLI) (LB)

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* plaintiff Robert Robinson filed the instant action on May 21, 2009 against City University of New York ("CUNY") s/h/a Brooklyn College[1] for racial and age discrimination. Defendant moves to partly dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2] For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint and are assumed to be true for the purposes of the 12(b)(6) motion. Plaintiff identifies himself as a "black man," originally from Jamaica, and born in 1952. (Compl. ¶ 9.)[3] Brooklyn College hired plaintiff on April 15, 1991 as an accountant, and promoted him in 1999 to Accounting Manager of the Auxiliary Accounting

---

[1] Brooklyn College is a senior college and subdivision of the CUNY system. Therefore, CUNY is the proper defendant to this action. *See* N.Y. Educ. Law § 6202(2), (5); *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (suits must be brought against CUNY, as its subdivisions, including the senior colleges, are not legally cognizable entities apart from CUNY).

[2] In reviewing plaintiff's complaint, the court is mindful that *pro se* submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citations omitted).

[3] The complaint does not contain consistently numbered paragraphs or pages. Defendant submitted a copy of the complaint that repaginated the document and renumbered the paragraphs. (*See* Decl. of Roderick L. Arz, dated Dec. 1, 2009, Ex. A.) The court will use this document for references to the complaint.

Unit.  (*Id.* ¶ 17.)  Plaintiff held that position for nine years.  (*Id.* ¶ 18.)  Plaintiff alleges that he received positive evaluations as Accounting Manager.  (*Id.* ¶ 20.)

In 2004, plaintiff's supervisor, Comptroller and Business Manager Mereese Ladson, an African-American woman, died and was replaced by Alan Gilbert, a Caucasian man.  (*Id.* ¶ 19.)  Under the new supervision, plaintiff alleges that employees felt increased racial tension, and "rampant" rumors circulated that racially based changes would take place within the Brooklyn College staff.  (*Id.* ¶¶ 19, 36.)  In October 2004, the Deputy Comptroller wrote that a "restructuring of the Business Operations" would take place.  (*Id.* ¶ 19.)  Plaintiff contends that, in the years following Ladson's death, "black employees, specifically black males, began to have their job titles and duties downsized and changed."  (*Id.* ¶ 21.)

Plaintiff alleges that he last received a salary increase in December 2003.  (*Id.* ¶ 23.)  Plaintiff had access to the payroll information of people in his department, and was thus able to learn that, although all workers who were not African-American received a salary increase and some were also promoted, no African-American worker in the department received a salary increase or promotion.  (*Id.* ¶ 23.)  Plaintiff cites to a table that sets forth increased salaries for various employees.  (*Id.* ¶ 23 & Ex. 9.)

Plaintiff also alleges that his department was subjected to "unwarranted and excessive" criticism and he and the other workers received "harassing" and "patronizing" emails asking for work to be completed "within unrealistic and unachievable deadlines."  (*Id.* ¶¶ 24, 25.)  Nonetheless, independent audits of his department's work continued to be positive.  (*Id.* ¶ 25.)

On May 31, 2005, Donal Christian, who plaintiff describes as a "younger male," joined the company (*Id.* ¶ 22).  In April 2007, Christian received a promotion, and became plaintiff's supervisor.  (*Id.* ¶ 28.)  Seventh months later, on December 3, 2007, Christian gave plaintiff an

"extremely negative" evaluation, which plaintiff did not sign. (*Id.* ¶ 28.) Moreover, plaintiff believed he had been evaluated under an erroneous title—Senior Accountant, rather than Accounting Manager. (*Id.* ¶ 28.) Plaintiff alleges that he was given no notice of his title change. (*Id.* ¶¶ 30-32.) When asked about the change, Christian claimed that in January 2007, Brooklyn College had advertised that it was seeking to fill the position of Accounting Manager. (*Id.* ¶ 28.) Christian further claimed that in March 2007, Gilbert sent an email alerting the staff that they were interviewing a candidate. (*Id.* ¶ 28.) Plaintiff appears to be arguing that Brooklyn College effectively demoted him to Senior Accountant, although he notes that his salary was not altered. On February 15, 2008, plaintiff received his second negative evaluation, and was terminated on February 22, 2008.

On May 21, 2009, plaintiff filed his complaint, alleging violations of the ADEA and of Title VII of the Civil Rights Act on the basis of race, color, national origin and age. With respect to Plaintiff's Title VII claims, Plaintiff alleges numerous instances of discriminatory conduct, but is unclear as to dates and does not allege specific causes of actions. (*See generally* Compl. ¶¶ 18-47.) The court construes plaintiff's allegations as asserting the following claims: (1) hostile work environment, (2) failure to promote and denial of salary increases, (3) demotion, and (4) termination.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). A complaint does not "suffice if it

3

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Twombly*, 550 U.S. at 555. On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995).

## DISCUSSION

**A.     ADEA CLAIM**

Defendant moves to dismiss plaintiff's ADEA claim pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the court lacks jurisdiction over Brooklyn College because of the Eleventh Amendment's conferral of sovereign immunity. (Mem. 5-6.) The Eleventh Amendment bars suits against a State "unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citation omitted). This bar "extends immunity not only to a state, but also to entities considered 'arms of the state.'" *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999)). Consequently, "suits against CUNY are equivalent to suits against the State of New York and are therefore barred." *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 83 (2d Cir.

4

2004); *see also Sacay v. Research Found. of City Univ. of N.Y.*, 193 F. Supp. 2d 611, 625 (E.D.N.Y. 2002) ("CUNY Senior Colleges are arms of the State for Eleventh Amendment purposes."). Moreover, no waiver or congressional abrogation exists with respect to ADEA claims. *See Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 89 (2000); *see also Barry v. City Univ. of N.Y.*, 2010 WL 1253928, at *5 (S.D.N.Y. Mar. 30, 2010) (dismissing ADEA claim against CUNY). Therefore, defendant enjoys Eleventh Amendment immunity from plaintiff's claims.

Plaintiff nevertheless argues that "[d]ismissal of the ADEA claim is premature because discovery may reveal additional entities which may need to be added as defendants," and which might not be arms of the state and, thus, against whom an ADEA claim might survive. (*See* Pl.'s Mem. of Law in Opp'n to Mot. for Partial Dismiss. by Def. Brooklyn College ("Opp.") at 5.) However, plaintiff cites no case law in support of his argument. While it is true that courts "generally require that plaintiffs be given an opportunity to conduct discovery on . . . jurisdictional facts," such discovery is only appropriate where plaintiffs demonstrate how the information they seek to obtain will establish jurisdiction. *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). Here, plaintiff has conceded that jurisdiction does not and cannot exist against Brooklyn College. (*See* Opp. at 5.) Thus, such discovery is not warranted, and plaintiff's ADEA claim is dismissed. *Cf. Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 349 (S.D.N.Y. 2009) ("Plaintiff has adduced no authority in support of its argument that dismissal of its discharged claims would be premature. Nor has the Court's own review of the law revealed any authority for allowing claims discharged in bankruptcy to survive merely to allow a party to conduct additional discovery." (internal quotation omitted)).

**B.     TITLE VII CLAIMS**

Defendant also moves to dismiss as time-barred plaintiff's Title VII claims that are based on conduct prior to May 31, 2007, although defendant does not specify which claims it believes are affected. (Mem. 6-8.) Claims under Title VII must be filed with the EEOC or equivalent state agency within 300 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006). Plaintiff filed his charge with the EEOC on March 26, 2008. (Compl. ¶ 12.) Claims based on conduct before May 31, 2007 are therefore time-barred.

**1.     Standards for Tolling the Statute of Limitations**

Where a claim is based on conduct outside of the limitations period, the claim may nevertheless survive in certain circumstances. Plaintiff argues that three doctrines affecting the statute of limitations are potentially applicable here: (1) the continuing violations doctrine; (2) equitable tolling; and (3) the Ledbetter Act.

"Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004) (internal quotation and citation omitted). A continuing violation may be found in two situations. The first is "'where there is proof of specific ongoing discriminatory polic[i]es or practices.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). The second is "where specific and related instances of discrimination are permitted by the employer to continue unremedied for

so long as to amount to a discriminatory policy or practice." *Id.* (citation and internal quotation marks omitted).

However, a claim may not be premised upon "discrete incidents of discrimination that are not related to discriminatory policies or mechanisms." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir. 1994). Indeed, "'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Quinn*, 159 F.3d at 765 (citation omitted). "Discrete discriminatory acts" include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. In contrast, "[h]ostile environment claims are different in kind from discrete acts," as they "cannot be said to occur on any particular day." *Id.* at 115. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

Claims can also be timely through the doctrine of equitable tolling. *Morgan*, 536 U.S. at 102. There are three general instances in which equitable tolling is appropriate, "(1) a plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; (2) a plaintiff actively pursued judicial remedies by filing defective pleadings during the statutory period; or (3) extraordinary circumstances have prevented the employee from exercising his or her right." *Jacobs v. SUNY at Buffalo School of Medicine*, 204 F. Supp. 2d 586, 592 (S.D.N.Y. 2002) (citing *Miller v. IT & T Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)). Equitable tolling will stay the running of the statutory period "'only so long as the plaintiff has exercised reasonable care and diligence.'" *Id.* (quoting *Dodds v. Cigna Secs.*, 12 F.3d 346, 350 (2d Cir. 1993)).

Finally, the statute of limitations can be tolled under The Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act"), Pub.L. No. 111-2, § 3, 123 Stat. 5, 5-6 (codified as amended at 42 U.S.C.

§ 2000-e5(e)(3)). The Ledbetter Act deems each paycheck issued pursuant to a discriminatory compensation decision or pay structure an independent, actionable act. It applies retroactively "to all claims of discrimination in compensation under Title VII . . . that are pending on or after [May 28, 2007]." Pub.L. 111-2, § 6, Jan. 29, 2009, 123 Stat. 7. Because the Ledbetter Act's tolling provisions expressly apply to claims based on alleged employment practices "with respect to discrimination *in compensation*," 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added), other employment decisions, such as claims for failure to promote, are excluded from its tolling provisions. *See Miller v. Kempthorne*, 2009 WL 4893670, at *2 (2d Cir. Dec. 21, 2009) (slip copy); *Vuong v. New York Life Insur. Co.*, 2009 WL 306391, *7-8 (S.D.N.Y. Feb. 6, 2009) (applying Ledbetter Act to discriminatory compensation claim but not failure to promote claim), *aff'd*, 2010 WL 93157, *1 (2d Cir. Jan. 12, 2010).

   2.   **Application**

      a.   **Hostile Work Environment Claim**

Plaintiff claims that a hostile work environment existed at Brooklyn College. (Compl. ¶¶ 19-29.) Plaintiff alleges that, beginning in 2004, defendant began restructuring operations and the "atmosphere at work became highly unpalatable." (Compl. ¶ 24.) Plaintiff contends that he received "harassing" emails, his superiors set "unrealistic and unachievable deadlines," and a "negative campaign" was directed at his department, including "unwarranted and excessive criticism" of his department during meetings. (Compl. ¶¶ 24-25.) In support of his claim, plaintiff attaches five emails, three from December 2006 and two from May and August 2007, as well as minutes from an October 2006 staff meeting as exhibits. (Compl. Exs. 10, 11, 14.) Although some of the events occurred prior to the relevant time period, the August 2007 email, which plaintiff alleges contained "sarcastic language [intended] to overtly disparage and insult

8

[him]," establishes that at least one act contributing to plaintiff's hostile work environment claim took place within the filing period. (Compl. ¶ 27 & Ex. 14.) Thus, plaintiff's hostile work environment claim is timely under the continuing violations doctrine. *See Anderson v. Nassau County Dept. of Corr.*, 558 F. Supp. 2d 283, 298 (E.D.N.Y. 2008) (finding that "plaintiff has sufficiently alleged a pattern of discrimination that continued over a period of years with some incidents occurring within the appropriate filing period"); *Early v. Wyeth Pharm., Inc.*, 603 F. Supp. 2d 556 (S.D.N.Y. Feb. 25, 2009) ("[W]hile several of the events supporting [the hostile work environment claim] occurred outside of the statutory period, they may still be found to be part of the actionable hostile work environment claim because at least one event . . . occurred within the statutory period.").

### b. Failure to Promote Claim and Denial of Salary Increase

Plaintiff further alleges that his last salary increase was in December 2003 and that "[b]lack workers in my department did not receive any salary increases or any promotions." (Compl. ¶ 23.) To the extent that plaintiff alleges a failure to promote claim, the claim must be dismissed. The continuing violations doctrine does not apply because allegations of failure to promote constitute a discrete act. *See Quinn*, 159 F.3d at 765. Equitable tolling does not apply because plaintiff had knowledge of the situation, failed to actively pursue timely judicial remedies or cite any other extraordinary circumstances preventing him from exercising his right. *See Jacobs*, 204 F. Supp. 2d at 592. Finally, the Ledbetter tolling does not apply because failure to promote is not a compensatory action. *See Vuong*, 2009 WL 306391 at *7-8. Thus, this claim is dismissed as untimely.

However, plaintiff's claim for failure to increase salary survives. Although the timing of the decision regarding the pay disparity is unclear, plaintiff's claim is timely. Under the

Ledbetter Act, if plaintiff demonstrates that his wages were the result of a discriminatory decision to pay him less money because of his race, his claims to recover for each paycheck received in that position dating back to May 31, 2007 are timely even if the discriminatory decision did not occur within that period. *See Russell v. County of Nassau*, 696 F. Supp. 2d 213, 227 (E.D.N.Y. 2010). In addition, he may recover for up to two years preceding the filing of his charge. *Id.* (citing *Schengrund v. Pa. State Univ.*, 2009 WL 3182490, *5 (M.D. Pa. Sept. 30, 2009); *Miller v. Kempthorne*, 357 Fed.Appx. 384, 386-87 (2d Cir. 2009)). Therefore, this claim is not dismissed.[4]

### c. Demotion

Plaintiff claims to have suffered a "clandestine title change" that he only found out about at "an extremely negative evaluation" on December 3, 2007, which is within the operative period. (Compl. ¶¶ 28-30.) Although the title change allegedly took place between January and March 2007, (Compl. ¶ 29), plaintiff alleges that he was unaware of his cause of action to due to the misleading conduct of Brooklyn College, (Compl. ¶¶ 28-30). Moreover, plaintiff exercised reasonable care and diligence by filing his complaint only a few months after learning of this claim. *Jacobs*, 204 F. Supp. 2d at 592. Therefore, the limitations period should be equitably tolled, and the court will not dismiss this claim. *See Eisert v. Town of Hempstead*, 918 F. Supp. 601, 607-09 (E.D.N.Y. 1996) (applying equitable tolling where plaintiff was unaware of her cause of action due to defendant's conduct).

### d. Termination

Plaintiff was terminated on February 22, 2008. This claim clearly is timely, as the complaint was filed within 300 days of the alleged unlawful act.

---

[4] Defendant appears to agree with this position, as it states that "Plaintiff's untimely claims of disparate treatment *not directly related to compensation* are outside the confined ambit of the tolling provisions of the Lilly Ledbetter Fair Pay Act . . . ." (Reply at 6 (emphasis added).)

# CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the ADEA claim and Title VII claim for failure to promote is granted. However, the motion is denied as to plaintiff's Title VII claims for a hostile work environment, denial of salary increases, demotion and termination. The parties shall move forward with discovery under the supervision of Hon. Lois Bloom, U.S.M.J.

SO ORDERED.

Dated: Brooklyn, New York
September 29, 2010

/s/
DORA L. IRIZARRY
United States District Judge